### No. 9390.

JOHN CHAFFE & SONS vs. MRS. ANNIE L. WATTS AND HUSBAND.

A chief object of the laws authorizing the wife to obtain a judicial separation of property, is to emancipate not only her property, but her industry, from control of the embarrassed husband, and from liability for his debts; to enable her to conduct business in her own name and for her own account and benefit, and thus to earn a livelihood for herself and family. When she thus conducts business in her own name and ostensibly for her own account and induces innocent third parties to contract with her upon the faith of her own and her husband's representations that the business is her own, she cannot afterwards repudiate her obligations on the pretense that the business was really that of the husband, in opposition not only to her representations, but to all the ostensible appearances of its conduct. Having thus represented and held out the business as her own, by conducting it in her own name through a series of years, as well as by her express assurances, the doctrine estoppel fully applies.

APPEAL from the Eighth District Court, Parish of Madison. Deloney, J.

*John B. Stone* for Plaintiffs and Appellees.

*Farrar & Spencer* for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. The defendant, Mrs. Watts, was separated in property from her husband by a judgment rendered in May, 1875, the validity of which is not questioned.

In February, 1879, her husband came to New Orleans with a letter from her addressed to plaintiffs, authorizing him to make with them necessary arrangements to carry on her planting operations for that year.

Plaintiffs refused to deal with him, but said that if Mrs. Watts would come and make her application in person, they might furnish her. She then came and applied in person for the advances. Mr. Chaffe says she told him that she owned the stock and implements on the places leased, and that they were leased by herself, and similar statements had been made previously by her husband.

There exists a conflict between the testimony of Mr. Chaffe and Mrs. Watts on these subjects, but there are so many contradictions and inconsistencies in the latter's statements, that the testimony of Mr. Chaffe certainly far outweighs hers, which contradicts not only the testimony of Chaffe, but that of Mackey, and even her own. On these statements, an arrangement was made between plaintiffs and Mrs. Watts in person, for advances to enable her to cultivate the plantations, and a crop lien was executed by her, with the authorization of her hus-

Chaffe & Sons vs. Watts.

band for such advances, with express understanding that the account with plaintiffs was to be kept in Mrs. Watts' name, but that her husband was authorized to draw or order against her account as her agent and over his signature as such.

Under these arrangements the plaintiffs made advances during the years 1879, 1880 and 1881. The operations resulted in heavy loss and indebtedness to defendants, for which, in 1882, the notes sued on were executed by Mrs. Watts with the authorization of her husband. Not only were the dealings exclusively between Mrs. Watts and plaintiffs, but the business of the plantations was conducted entirely in the name of Mrs. Watts, the leases to the sub-tenants and all other affairs being conducted entirely in her name, her husband never appearing therein except as her agent.

There is no pretense that the advances and supplies were not used in the business of the plantations, which had been represented and conducted exclusively as the separate business of the wife.

Under these circumstances, nothing seems wanting to fix the liability of the wife.

But in the defense to the suit, it appears that the plantations so cultivated had been leased for a term of five years in the name of the husband. This was not known to plaintiffs and was contrary to the express representations to them of both the husband and wife. At the date when the arrangement was made between Mrs. Watts and plaintiffs, in February or March, 1879, this lease was not recorded, but was only put of record afterwards in April, 1879.

This is the sole fact upon which the exemption of Mrs. Watts from liability is claimed.

It is totally insufficient to sustain such defense. It would give effect to a gross fraud to permit it.

Whatever effect the record of the lease might have had as notice to plaintiffs, is destroyed by the fact that, although the lease antidated, the record thereof was subsequent to the completion of the arrangement with plaintiffs.

But, under the circumstances of this case, the lease is, in any event, of no consequence. The question is not in whose name the plantations were leased, but who cultivated them, and whose business the cultivation was. There is nothing to prevent a husband from permitting his wife, separate in property, to cultivate and conduct for her own account a plantation leased or even owned by himself, when he has neither means nor credit to conduct it, and when, as in this case,

the wife had purchased, in execution of her judgment of separation, all the property of her husband, including mules and other essentials for working a plantation.

And if he permits her to do so and she conducts the plantation in her own name and for her own account, as her separate business, she cannot repudiate debts contracted by herself for the conduct of such business, and actually used in the conduct thereof.

In the case of Bank vs. Bruff, 33 Ann. 624, we said: "The general capacity of a married woman to contract, like all other rational beings of competent age, is restricted only by the necessity of her being authorized by her husband or by the court, and by the absolute prohibition to bind herself for the debts of her husband or of the community."

Here Mrs. Watts was duly authorized by her husband.

There existed no community between her and her husband, that having been terminated by the judgment of separation.

If, then, she has not bound herself for the debt of her husband, it should seem that her contract cannot be questioned.

How can it be said that the debt here sued on is the debt of the husband. It arises from a contract between Chaffe & Sons and Mrs. Watts. The plaintiffs never contracted with Watts. They expressly refused to contract with him or to have any dealings with him. It would be absurd for them to claim to be creditors of Watts. Therefore, Mrs. Watts has not bound herself for the debts of her husband.

But it is claimed that it must be shown that the moneys and supplies advanced enured to the separate benefit of the wife.

Admitting this to be true, the record shows that they were actually used for the purposes for which they were advanced, to wit: in the business of cultivating the plantations, which business was represented by both the husband and the wife to be the separate business of the latter, which was conducted in her name and as her business, in all the dealings connected therewith, not only in those with plaintiffs but in those with all other persons, not excepting the landlord himself.

It is perfectly clear that, had the business resulted profitably, she could have held the avails thereof against her husband or his creditors.

Can she, now, by simply saying there was a secret understanding between my husband and myself that this business, conducted in my name and held out and represented to all the world as mine, was really the business of my husband, and, therefore, the debt contracted by me was for his benefit—defeat and defraud her creditor?

The proposition is monstrous. It was met in the case of Bank vs. Bruff already cited.

There the wife had become surety for the debt of a commercial firm of Leo Babin. It turned out that her husband was a silent partner of Babin, which fact, however, was concealed from the party who received the wife's surety-ship. When this fact was opposed to his recovery, we said, the dealings of the parties "justified innocent third parties to treat Mrs. Bruff as contracting to secure the individual debts of Leo Babin, and she is now estopped from alleging that the debts which she intended to secure were those of her husband. To release her now from her contract of surety-ship, on the ground of her husband's interest in the house of Leo Babin, when such connection had been designedly concealed for the purpose of her husband's fraudulent protection, would be to convert the laws for the protection of married women into means of deluding and insnaring innocent parties into legal pit-falls, and would inaugurate a system of legalized deception and fraud." Bank vs. Bruff, 33 Ann. 626.

The application is obvious with this difference, that there, the wife had, in point of fact, bound herself for the debt of her husband; while here we are satisfied that the business was, in fact, the wife's, and would have been maintained as such against any claim of the husband or his creditors.

The doctrine that a married woman is not subject to the law of estoppel is subject to limitations, when she seeks to perpetrate deliberate frauds.

The case just quoted affords one example of such limitations; and in the learned opinion in Henry vs. Gauthreaux, 32 Ann. 1103, the organ of this Court gives other examples supported by exhaustive quotations of French and Roman authorities.

The instant case is as strong as could be conceived for the application of such limitations, which are thus emphatically announced by the Chief Justice in the case of Henry vs. Gauthreaux: "While the law and the jurisprudence have, at all times, favored married women in the assertion of their rights, they have never intended, and do not contemplate, to protect them in the perpetration of fraudulent practices by which to enrich themselves gratuitously at the expense of their neighbors * * under the remarkable system of civil law which exists in this State, and in which both law and equity are admirably blended, married women, who have become guilty of fraudulent representations to obtain money, should be held as insuperably

*estopped* from repudiating their conduct, sanctifying their wrongful deeds, and from exonerating themselves from responsibility towards *bona fide* creditors."

This language is, perhaps, even too broad and emphatic; but as applied to the case then under consideration and to the present case, the doctrine is clearly correct.

The pretense here made that the wife only acted as she did under the stress of marital influence, is equally disposed of by the Henry case, where the wife charged that she acted under "marital threats, coercion and violence;" but the court disregarded this on the ground that "the only evidence offered to substantiate this ground of complaint is that of plaintiff herself, unsupported, in any respect, by any corroborating testimony. It is so weak, so open to suspicion, so unpalatable, that it is not entitled to the least weight, particularly as nothing shows that the mortgage creditor had any knowledge of the facts and threats charged."

The same circumstances exist here; and the conduct of the wife, extending over a series of years, has been too consistent and long-continued to admit of such explanation.

No greater calamity could befall the true interests of married women, as a class, than to maintain such defenses as are here presented; since it would render all dealings with them impracticable and would utterly destroy their power of obtaining credit or conducting business.

One of the most beneficent objects of the laws authorizing separation of property, is to emancipate, not only the property, but also the industry, of the wife from control of an insolvent husband, and to enable her to earn a livelihood for herself and family, free from his debts and embarrassments.

It enables her to conduct business on her own account and for her own benefit. To apply to her transactions in the conduct of such business the same restrictions which are applied to wives not separated, would be to ignore a chief object of the law in emancipating her from those powerful presumptions under which all the transactions and acquisitions of either spouse are assigned to the legal community of which the husband is the head.

She cannot be permitted to abuse this privilege, by inducing innocent third persons to contract with her on the faith of her own representations that the business which she conducts in her own name and ostensibly for her own account is her business, and afterwards repu-

diating her obligations upon the pretense that such business was really that of her husband.

A doctrine so subversive of morality and hostile to reason finds no countenance in any decision that was ever rendered by the Supreme Court of Louisiana.

## DISSENTING OPINION.

BERMUDEZ, C. J. 'This is a suit against a married woman separated in property by judgment, to hold her liable for a series of notes issued by her with her husband's authority.

The defendant admits signing the notes, but avers that she is not responsible; that the consideration thereof did not enure to her benefit; that they were issued for the advantage of her husband; that she signed them at his request, to assist him in his planting operations.

The record establishes the following facts:

On February 14, 1879, Mrs. Watts addressed a letter to plaintiffs, stating that her husband would visit them to arrange with them to carry on her planting interest *for the current year* and that he was her agent.

On the 19th following, a written contract was signed by Mrs. Watts jointly with her husband in favor of plaintiffs, whereby it was agreed that supplies would be furnished by advances made for the working of the Mitchell place, owned by Dr. Mitchell, for that year, not to exceed $3300, guarantees being made for reimbursement.

In February following, a similar contract was likewise signed for that year, (1880) limiting the advances to $1500, with guarantees also.

It does not appear that these were followed by other contracts.

The plantation had been leased on November 30, 1878, for five years by Dr. Mitchell, to Mr. Watts, defendant's husband, and the lease recorded on April 9, 1879. The annual rent was to be $500 in money and twelve bales of cotton. The lessee was to put up, each year, a tenant house complete, and keep the fences in good order. The crops were to be consigned to the plaintiffs.

It is not disputed that the notes sued on, dated one in March, 1881, and the others in January, 1882, were issued for supplies and advances and in settlement of open accounts running for some time preceding and including 1882, for both the Mitchell and another place.

The proof offered consists of the testimony of Mr. Chaffe, of Mrs. Watts, of Mr. McKay, and of documentary evidence.

The testimony of Mr. Chaffe and that of Mrs. Watts are in distinct conflict, as to what transpired at his office, Mr. Watts being present.

He states that they had a business conversation which ended satisfactorily.

Mrs. Watts affirms that she had no such conversation; that soon after she entered the office, the notes were produced and signed; that she did not know what the agreement was; but that her husband told her it was necessary she should sign.

It is claimed that Mrs. Watts, on her cross-examination, has so contradicted herself that no weight should be attached to her testimony.

Mrs. Watts merely corrected a statement in her re-examination in chief, touching a few mules adjudicated for her account, at the sale under her *fi. fa.* against her husband, which took place in 1875.

It does not appear that either of the places managed by Mr. Watts was ever leased to Mrs. Watts, or that she administered the same. The written lease in the record was made by Dr. Mitchell to Mr. Watts, more than three years after the judgment of separation, which was signed may 28, 1875.

The sub leases in evidence are signed by Mr. Watts as agent, without naming the principal.

There is nothing to show that Mr. Watts ever accounted to Mrs Watts.

The testimony of Mr. McKay, an employee of plaintiff's, shows that he paid annual business visits and knew no one but Mrs. Watts in his dealings. Mrs. Watts testifies to the reverse.

The documentary evidence consists mainly of the proceedings in separation of property, of Mrs. Watts' letter to plaintiffs, of the contracts for supplies and advances, of the accounts, the notes, the lease and sub-leases.

' The whole strength of the plaintiffs is exerted to prove that Mrs. Watts made representations to them that she had leased the property and was working the same for her benefit; that she owned the stock and implements on the places; that on the faith of these representations, they contracted with her, furnishing supplies and advancing money; that she appointed her husband her agent to deal with plaintiffs and manage the places; that he acted as such, transacted business with them, working the plantations and subletting the same to various parties; that the plantations accounts were kept in Mrs. Watts' name; that the traveling clerk, McKay, always dealt with her. It is inferred from this state of facts that Mrs. Watts must be held liable.

The questions arising under the pleading and the evidence are simply as follows:

1. Whether the alleged statements and representations of Mrs. Watts are evidence against her, which she cannot gainsay.

2. Whether, from the fact that Mrs. Watts is *separate in property* from her husband, the plaintiffs are relieved from proving that the consideration of the notes sued on has enured to her benefit.

3. Whether the plaintiffs have administered that proof.

### I.

It has been repeatedly held that, whatever the doctrine of estoppel be, it is inapplicable to married women or their property, when sought to be subjected to liability; that they cannot be deprived of their estate by constructive fraud, and can be concluded only by actual and positive frauds practiced by them on innocent persons who had not and could not have the means of verifying the real condition of things.

The courts have gone so far as to say that special denials would throw on the plaintiff the burden of establishing the facts necessary to fasten responsibility, whether the woman was common or separate in property, that where the evidence did not fulfil legal requirements, recovery could not be had.

Jurisprudence has consecrated the doctrine, that even a confession of judgment made by a married woman in the absence of necessary proof, will not conclude her and is assailable by her. McIntosh vs. Smith, 2 Ann. 756; Patterson vs. Fraser, 5 Ann. 586; Beauregard vs. Husband, 7 Ann. 294; Moussier vs. Zunt, 14 Ann. 15; Bisland vs. Provosty, 14 Ann. 169; Barnes vs. Burbridge, 15 Ann. 628; Medart vs. Fasnacht, 15 Ann. 621; Bouligny vs. Fortier; 16 Ann. 209; LeBlanc vs. Bouchereau Ib. 11; Dancy vs. Martin, 23 Ann. 323; Strother vs. Hamlet, 28 Ann. 839; Edwards vs. Edwards, 29 Ann. 597; Coleman vs. Rush, 30 Ann. 1157; Chaffe vs. Oliver, 33 Ann. 1008; Harang vs. Le Blanc, 34 Ann. 635.

The ruling in the case of the Bank of Lafayette vs. Bruff, 33 Ann. 624, however antagonizing with that in 26 Ann. 737, cannot be invoked as having derogated to the doctrine of estoppel, as announced.

There, and in Henry vs. Gauthreaux, 32 Ann. 1103, the parties were innocent third persons, while such is not the fact as to the plaintiffs in this litigation.

It therefore follows that whatever the representations or admissions which Mrs. Watts made, whatever the contracts be which she entered into, she is not bound or concluded by them, unless the existence of the material facts be proved by the suing creditor, *otherwise* than by

her declaration. If it were not so, the law might be evaded by a simple change of the form of the instrument. 14 Ann. 15, 169; 7 Ann. 293; 5 Ann. 586.

## II.

It will not avail the plaintiffs to discriminate by saying that such may be, or is the case, where the married woman sued is common in property; but that the law is different as to a woman separated in property.

The effect of a separation of property by judgment (as is the case in the present instance) is simply to put an end to the pre-existing community of acquets and gains between the wife and the husband, and to entitle the former to the exclusive administration of her property.

The separation of property strips the dotal property of the wife of that character and makes it paraphernal, the fruits then belonging to the wife and no longer to the husband. 8 R. 457; 2 Ann. 771; 13 Ann. 2·

It is settled by a long line of precedents resting on sound principles and wise law, that the fact that the wife is separated in property, does not throw upon her the burden of proving that the debt for which she is sued did not enure to her benefit. Neither does the same fact estop her from setting up such a defense by her admission of the debt, before suit.

The law equally protects married women whether they are separate or common in property. The judgment of separation does not dissolve the bonds of matrimony, any more than could a stipulation to that end, in the marriage contract.

It imposes upon parties suing a married woman—whether she be common in property or not—the burden of proving that the amount claimed is due by her, and that her estate is liable for its payment, for the reason that it has enured to her benefit, or to that of her property, which is the same, whenever the wife denies having derived any benefit therefrom, or where a default is to be confirmed against her. 12 Ann. 663.·

Pascal vs. Sauvinet, 1 Ann. 428; Erwin vs. McCalop, 5 Ann. 173; Patterson vs. Fraser, 5 Ann. 586; White vs. Baillo, 12 Ann. 663; Heald vs. Owing, 12 Ann. 725; Moussier vs. Zunts, 14 Ann. 15; Lee vs. Cameron, 14 Ann. 700; Bowles vs. Turner, 15 Ann. 352; Draughton vs. Ryan, 16 Ann. 309; Barlington vs. Bradley, 16 Ann. 310; Kennedy vs. Boissiere, 16 Ann. 449; Bank vs. Barrow, 21 Ann. 398; Hoy & Co. vs. Manning, 25 Ann. 142; Urquhart vs. Thomas, 24 Ann. 95.

The philosophy of the legal requirement so frequently recognized and consacrated, that the party suing a married woman, whether common or separate in property, shall prove that the consideration of the claim has enured to her exclusive advantage no doubt is :

1. That a married woman belongs to the class of persons of limited capacity, assimilated to a minor having no right to contract unless in exceptional cases, specially provided for and forbidden from doing so in other specified instances, R. C. C. 1782, 1790, 2446 ; H. D. 864, No. 7; Demolombe, vol. 4, p. 239, § 210 ; and

2. That the wife is presumed to yield to marital influence and pressure, and to have done so injuriously to her interest, for the benefit of her husband in violation of a prohibitory law. R. C..C. 2398, 2446, 1790.

The law does not discriminate, whether the husband be necessitous or wealthy. A wife can no more bind herself for or with an opulent than she can for or with an impecunious husband.

A fair test in such cases is, whether the husband could be held liable for what is claimed of the wife, had she not bound herself for it. Of course, this test could not apply to exceptional cases, formally and expressly taken out of the rule, where by distinct stipulation the husband is under no contingency to be held responsible, if the wife were not.

The law relieves a plaintiff from such proof, only where the married woman sued, has been authorized by the judge to borrow, or is a public merchant ; but even then, it does not debar her, under proper charges of collusion and fraud, implicating the plaintiff, from proving circumstances exonerating her from liability. Rice vs. Alexander, 15 Ann. 54; Bank vs. Barrow, 21 Ann. 398; Miller vs. Wisner; 22 Ann. 457; Falcour vs. Stapleton, 24 Ann. 89; Feltus vs. Blanchin, 26. Ann. 401 ; Reitch vs. Rosselin, 26 Ann. 418; O'Keefe vs. Handy, 31 Ann. 832 ; Hall vs. Wyche, 31 Ann. 734; Stapleton vs. Butterfield, 34 Ann. 822 , Darling vs. Lehman, 35 Ann. 1186.

Whoever deals with a married woman is, by the very nature of the transaction, put on his guard. It is incumbent upon him to ascertain that her estate can be charged with the claim. Pilcher vs. Kerr, 7 Ann. 144; Carroll vs. Manning, 24 Ann. 142; Stapleton vs. Butterfield, 34 Ann. 822.

The plaintiffs cannot be heard to question those various propositions of law, which are deeply embedded in our jurisprudence, as not only have they alleged in their petition that the consideration of the notes was for the wife's benefit and advantage, but also have they undertaken to prove the fact.

### III.

The third question now presents itself. Have they done so?

Admit that the evidence shows that the supplies were furnished and the advances made for the working of the two places, where is the proof in the record that the places belonged to the defendant or were leased by her and were administered by her.

The proof shows that the property was leased to her husband in his own name ever since 1878, previous to the furnishing of supplies and making of advances.

Even if the lease had been taken in defendants' name, by her husband, the question would arise as to his authority for doing so. A lease is a transfer and a purchase of property. It is a dismemberment of property by one in favor of another, for a stipulated time. To acquire property, a special power is necessary. The power which Mrs. Watts gave was that contained in her letter. It was limited to one year and was one of administration only. 13 Ann. 566; 5 Ann. 173, 572; 1 Ann. 428; 18 L. 467.

Had she taken the lease herself, the question would arise whether with the means she then had and which are not proved, and which possibly consisted of what remained of her purchase under her *fi. fa.* against her husband—whether she could legally bind herself by venturing in a planting operation and leasing property the rent of part of which for five years exceeded six thousand dollars, exclusive of the cost of working the places, the expense of the construction of the building annually to be erected and the keeping in order of the fences on the place.

The law protects all married women equally, whether they be separated or common in property, from the consequences of all wild and ruinous ventures.

In the case of Draughon vs. Ryan, 16 Ann. 309, the Court held that a wife separate or not in property, could not be held liable on a note issued by her for supplies and advances, furnished for the working of a plantation *leased* by the husband.

The Court said: "It is clear that the note was not given for the improvement or benefit of the paraphernal property of the wife, but simply to enable the husband to work a plantation which did not belong to the defendant. The circumstance that the husband had no separate property of his own, does not create an obligation on the part of the defendant to satisfy the claim set up by the plaintiff."

In the case of Carroll, Hoy & Co. vs. Manning, 24 Ann. 142, the wife was likewise relieved from the payment of a note subscribed by her, the consideration of which was supplies furnished to cultivate a plantation cultivated by her husband.

In the more recent case of Hall & Lisle vs. Wyche, 31 Ann. 734, the wife was discharged from liability, for the price of mules said to have been sold to her and to her husband, to work a plantation alleged to belong to her, as it was not shown that the same was administered by her.

In a case of the present plaintiffs, decided in June last in Monroe, it was held that where a community exists and the husband cultivates a plantation belonging to the wife—the debts incurred therefor, are his and cannot be enforced against her property.

We said that even though the wife has signed lien contracts in favor of the factor for supplies and advances, if the fact be that she had not the administration of her separate property, but her husband, he alone is responsible. 36 Ann. 824-5; Chaffe vs. McIntosh.

The court thus ruled in the several cases on the principle that a wife whether separate or common in property, cannot be held where the proof does not show that the wife was the owner and administered and that the consideration has enured to her benefit.

This Court has uniformly taught that whenever any married woman is sought to be held liable, where she denies responsibility, it will disregard the form in which the obligations have been garbed and look into the very nature of the transaction; that it will require proof that the consideration enured to the benefit of the wife and in default of satisfactory evidence, would exonerate her from liability.

As to the question of the right and power of a married woman, to acquire property for her separate benefit, whether common or not, this Court has gone very far in the cases of Miller, wife of Jackson, vs. Handy, Sheriff, 33 Ann. 160 and of Chaffe & Sons vs. DeMoss and wife, recently decided. (No. 9357.)

In the last case, the title of the wife, who was separate in property, was maintained, because the evidence showed that the price had been paid by her.

Laurent in his elaborate commentaries on the Napoleon Code, teaches on the best authority, that a wife separated in property has not and cannot be recognized, the right to speculate, to purchase where she

has not the means to acquire. "*Ce serait*, says he, *lui donner le droit de se ruiner*." V. vol. 22 p. 310, No. 297; also Nos. 292–300; No. 312 *et seq.*, No. 321 *et seq.*

In the present instance, let it be supposed that the crops raised on the two places had been seized by the creditors of Mr. Watts, could Mrs. Watts claiming ownership, be recognized to be entitled to the same, under the evidence in this case?

She could not prove ownership of the land or a lease of it to her.

She could not prove that she had the reasonable means required to venture in the planting undertaking.

She could not prove she administered the property.

She could not prove that the supplies and money were delivered to her.

She could not prove a continued sufficient procuration to her husband.

She could not prove accounting to her by her husband.

She could not prove dealings by her with her factors.

In her inability to establish the essential facts on which to base a claim of ownership, she necessarily would fail and the creditors would take.

How then can the plaintiffs in this case claim that she is responsible for supplies furnished and money advanced for the cultivation of plantations leased to her husband and not administered upon by her?

The plaintiffs knew they were about dealing with a married woman and were thus put on their guard.

As was said in Pilcher vs. Kerr, 7 Ann. 144: "It was incumbent on them to ascertain that her estate could be charged."

It would have been easy for them to have ascertained whether she had reasonable means, whether the places were leased to her, before entering into any agreement with her.

The testimony in this case consists merely of that of one of the plaintiffs and of that of their travelling clerk, even if little or no weight is attached to that of Mrs. Watts. The documentary evidence of itself is no proof against the defendant. All her admissions therein should have been verified by proof *dehors* the instruments.

The plaintiffs should not be permitted to recover their large claim from the defendant on this insufficient showing.

The judgment appealed from should be reversed and the plaintiffs non suited.