## OUACHITA FLOUR & FEED CO., Inc., v. BOLES (Subroad Dist. No. 5, Garnishee, BOLES, Intervener).

### No. 4280.

Court of Appeal of Louisiana. Second Circuit.
May 20, 1932.

*Rehearing denied May 30, 1932.

824

Warren Hunt, of Rayville, for appellant.

Tobin R. Hodge, of Rayville, for appellee.

McGREGOR, J.

Mrs. Nannie Boles, the intervener herein, was separated in property from her husband, J. O. Boles, by a judgment of the Fifth district court of Richland parish, rendered on November 16, 1920, the validity of which is unquestioned.

At various times Mrs. Boles inherited sums of money which amount in the aggregate to over $2,000. This money was invested by her in real estate, farm lands, live stock, agricultural implements, and some road machinery. These purchases were made upon the advice and with the assistance of her husband, J. O. Boles, acting as her agent.

In the management of her business, Mrs. Boles relied solely upon the judgment and service of her husband. He was her agent with full authority to act as he would in his own business. If a mule or cow or farm implement was needed, he had full authority to buy it. If he found it to be for her best interest, he had authority to sell or otherwise dispose of any of her personal property, though he usually discussed all these matters with her before acting. All revenues from her property were deposited in bank in her name, while her husband had full authority to draw checks upon same as he saw fit.

During the year 1931 the parish of Richland was building graveled roads in subroad district No. 5, and required the use of teams and machinery. Acting through her husband as her agent, Mrs. Boles agreed to do certain work on these said roads with her mules and machinery.

In his dealings with the parish authorities in charge of the road construction work, Mrs. Boles' husband probably dealt in his own name, and did not make it plain that the teams and machinery were the property of his wife and that the compensation for their work and use was due to her.

Payment for the use and work of the said machinery and teams was made by check at stated intervals. Sometimes these checks were made payable to J. O. Boles and sometimes to the foreman in charge of them. Whoever collected the check paid all the labor and other expenses incurred in connection with the work, including feed for the mules.

For some time prior to, and ever since, the time when Mrs. Boles secured her judgment of separation of property against her husband, J. O. Boles, he has been insolvent and has owned very little, if any, property. Judgments were secured against him, and among his judgment creditors was Ouachita Flour & Feed Company, Incorporated, the plaintiff herein.

Plaintiff's judgment was for $433.37, with interest and attorney's fee, subject to a credit of $100, and was dated April 23, 1929. In an effort to collect its judgment, on September 25, 1931, plaintiff seized under writs of fieri facias and garnishment the sum of $259 in the hands of the police jury of Richland parish. In answer to interrogatories propounded to it as garnishee, the police jury, through its president, declared that it was indebted to J. O. Boles in the sum of $259 for work done on the public roads of subroad district No. 5. Later the plaintiff caused another garnishment to issue, and in answer to interrogatories propounded to it, the police jury, through its president and clerk, answered that it was indebted to Mrs. Nannie Boles in the sum of $101.72 for labor performed by J. O. Boles on the public roads of this same subroad district No. 5.

On October 6, 1931, Mrs. Boles filed her petition of intervention and third opposition, wherein she set out: (1) The fact of her being separate in property from her husband by judgment of the district court; (2) her ownership of property and its management by her husband, J. O. Boles, as her agent; (3) the performance of said work on the public roads of subroad district No. 5 with her teams and machinery; (4) that there was due her for work thus done the sum of $259; and (5) that this sum had been garnished by the plaintiff, the Ouachita Flour & Feed Company, Incorporated, in an effort to collect a judgment which it held against her husband, J. O. Boles. She specially alleged that no part of the said sum was due to her husband, but that it was due and owing to her for labor hired by her and for the use of her teams and machinery. She prayed for judgment in her favor, recognizing her as the owner of and entitled to receive the money garnished as her separate paraphernal funds earned from the use of her separate paraphernal property.

Coupled with her intervention and third opposition, Mrs. Boles caused to be issued a rule directed to the plaintiff and the police jury commanding them to show cause why an injunction should not be issued restrain-

ing the payment of the said $259 to the said Ouachita Flour & Feed Company, Incorporated.

A similar intervention was filed, and rule issued with reference to the $101.72 garnishment, and it was agreed that the two proceedings should be consolidated and tried together.

At the trial of the case in the district court, judgment was rendered in favor of the intervener, Mrs. Nannie Boles, declaring her to be the owner of, and ordering the police jury to pay to her, all the $259 seized in the first garnishment, and all the $101.72 seized in the second garnishment except the sum of $11.50, which was ordered to be paid to the plaintiff, the Ouachita Flour & Feed Company, Incorporated. From this judgment the plaintiff appealed. The intervener, being satisfied with the judgment, has neither appealed nor answered the plaintiff's appeal.

### Opinion.

Stated in a few words, the appellant contends that the lower court erred in holding (1) that the teams and machinery worked and used were the property of the intervener, Mrs. Nannie Boles, and (2) that J. O. Boles was working as agent for his wife, and, as such, managing her separate property.

The evidence is clear and undisputed that all the mules and machinery were the property of Mrs. Boles, bought and paid for with her money and the revenues from property owned by her. They were assessed to her, and she paid the taxes on them. From time to time she borrowed money on the live stock, and granted chattel mortgages on the same. It is admitted that Mrs. Boles actually received by inheritance more than $2,000 in cash. According to the testimony of both Mr. and Mrs. Boles, all this money was invested by her through her husband, J. O. Boles, in real estate and personal property. Appellant contends that it has not been proved that any of this money or any income from property bought with it was used in the purchase of the mules and machinery used in the road construction work. Both Mr. and Mrs. Boles testify positively that the property was bought with Mrs. Boles' separate funds. There is no testimony to the contrary, and we must accept this as a proved fact. Appellant insists that Mr. Boles hid his own property in his wife's name to protect it from his creditors, but we find no evidence in the record to this effect. It is true that Mrs. Boles knows very little about the details of her business affairs. She has confidence in her husband's ability and leaves everything to him, but this does not alter the fact of her ownership of the property and her right to receive all sums earned through its use. Mr. Boles did no work in connection with the road construction. All he did was to hire labor and put them in charge of his wife's mules

and machinery and provide feed for the mules. The prices paid by the police jury included everything. Mrs. Boles was bound for the wages of the foremen and teamsters, as well as for the feed for the mules. If these bills had not been paid, she could have been sued for them, and could have offered no defense.

In the case of First Natchez Bank v. Moss, 52 La. Ann. 1524, 28 So. 133, 134, a situation was presented that is very similar to the case under consideration. A $10,000 corporation under the name of Janvier & Moss, Limited, was organized by Mrs. Moss and some young ladies by the name of Janvier. Seventy-three shares of the stock were issued and delivered to Mrs. Moss, and the other twenty-seven were issued and delivered to the Janvier young ladies. No money was paid into the treasury of the corporation for the stock issued and received, but all the stockholders made loans to the company with the understanding that they were to be returned to them by the company out of the earnings. The corporation was a successor to a partnership business which failed, and in which Mrs. Moss' husband was a partner. The business of the corporation was managed almost exclusively by Mr. Moss, the husband, just as though it were his business, but he received no compensation for his services and drew no funds from the company's business. The plaintiff held a judgment against Moss and sought to subject the seventy-three shares of stock to the payment of its judgment by having them declared to be the property of Moss and not of his wife. The plaintiff prayed to have the title of Mrs. Moss to this stock declared fraudulent and simulated, and an injunction was sought to restrain her from disposing of the stock during the pendency of the suit. In rendering judgment in favor of the defendant, the court reaffirmed the principle "that a separation of property dissolves the community," and "that all that the separate spouse acquires is for his or her account alone."

In his brief, counsel for appellant argues that J. O. Boles, the husband, hired and worked the stock in question in the interest of a "re-established community," and that for that reason the compensation received belonged to this same "re-established community," and should be subject to the payment of the judgment against him which, under his theory, would be a community debt.

The question of a "re-established community" is not before us in this case as it was not raised in the pleadings. In the case cited above this same question was raised, and in disposing of it adversely to the plaintiff the court said:

"With reference to a community which is dissolved by a judgment of separation of property, it *may well be* that the husband and wife *may reinstate* it by *abandoning the* pro-

826

tection accorded to the wife under the judgment, provided the interests of third persons remain undisturbed thereby. But nothing of the kind seems to have been intended here, either expressly or impliedly. There were no large accumulations made and placed to the credit of the husband. He renders services, it is true, but they are entirely in the interest of the wife. It would be different if the husband were not serving in the wife's interest, but the wife's interest were serving the husband. The law provides that the wife should contribute to the expenses of the family and to the education of the children to the extent of her ability. She is held to their entire support if the husband is entirely without resources. It follows that to the extent of his ability, at least, as much in the way of support is incumbent upon the husband. If the husband, *after having seen his stores dwindle down until he becomes absolutely without the means to support* and raise his family, then assists his wife in this most laudable purpose, instead of remaining supinely indifferent, we cannot think that this *can be taken as an evidence of intention to re-establish the community.* [Italics ours.]

\* \* \*

"By the judgment of separation, the wife has the enjoyment and management of her paraphernal property. If it prospers a little, owing to the husband's management for her, the profits do not fall into the community or become his own."

So in the present case the activity of Mr. Boles, the husband, in managing his wife's business, and his efforts to earn money with her mules and machinery, cannot be construed as evidence of the "re-establishment" of the community. The law imposes upon Mrs. Boles the obligation of at least assisting in the support of her family since she owns all the property, so her rights under her judgment are not impaired, if she permits her husband, who manages her property and serves and conserves her interest, to use some of her revenues for his own personal benefit. Neither does this activity on the part of the husband indicate any intention on his part to claim an interest in his wife's paraphernal property. The law likewise imposes upon the husband the duty to support his family, and, if he finds his own property and resources lost and finds himself without any means of supporting them, it is commendable that he should concentrate all his energy on the conduct and management of his wife's business and the protection of her property. In thus managing his wife's property the husband may appear to be acting for himself, but that fact alone would not alter the wife's right to receive the income from her property. It could easily be that, by his conduct of his wife's business, the husband would become liable for the expenses incurred, but that would not give his creditors any rights on the wife's property.

It may well be in this case that the plaintiff, being uninformed, honestly thought that the road work was being done by Mr. Boles on his own account, but that error of fact cannot deprive Mrs. Boles of her property nor the right to receive the income therefrom. She is in no way responsible for her husband's debts. The judgment against Mr. Boles was secured long before the money garnished was earned, and plaintiff cannot say that it has been injured by the fact that it was not aware of Mrs. Boles' ownership of the mules and machinery, and that Mr. Boles was acting in behalf of his wife in putting this property to work on the public roads.

The intervener cites two cases: Chaffe & Sons v. Watts, 37 La. Ann. 324, and Paul v. Arnoult, 164 La. 841, 114 So. 706. Counsel for plaintiff questions the applicability of these authorities. The Chaffe Case is applicable, in that it declares:

"One of the most beneficent objects of the laws authorizing separation of property, is to emancipate, not only the property, but also the industry, of the wife from control of an insolvent husband, and to enable her to earn a livelihood for herself and family, free from his debts and embarrassments.

"It enables her to conduct business on her own account and for her own benefit. To apply to her transactions in the conduct of such business the same restrictions which are applied to wives not separated, would be to ignore a chief object of the law in emancipating her from those powerful presumptions under which all the transactions and acquisitions of either spouse are assigned to the legal community of which the husband is the head."

If Mrs. Boles had not been separate in property from her husband, then, under the law, the earnings of her mules and machinery would fall into the community, and would be subject to the payment of plaintiff's judgment, but, since she is separate in property, she is safe in intrusting the sole management of her property to her insolvent husband.

The Paul v. Arnoult Case, differentiates between the "administration" of a wife's separate property during a community and its "management" by him, as agent, after a judgment of separation of property has been obtained. In the case under consideration the husband was the agent of the wife, managing her property. He could not "administer" it in such a way as to cause the revenues from it to fall into the community, for the very good reason that there was no community. It had been dissolved by judgment of the court eleven years before. He could not appropriate to himself the revenues from her prop-

erty any more than he could do if he were handling a stranger's property as agent.

For these reasons the judgment appealed from is affirmed, with all costs to be paid by the appellant.