## José Prats v. His Creditors.

The provisions of the Civil Code which establish mortgages in favor of minors and married women, at least so far as they are tacit and exist without being recorded, are confined to persons who marry in this State, or receive their appointments as tutors from our courts, or who, after marrying or receiving such appointments abroad, come to reside here ; and in the latter case, such tacit mortgages exist only for sums received since their removal to this State.

Appeal from the Parish Court of New Orleans, *Maurian*, J.

Morphy, J.   The wife of the insolvent made opposition to a tableau of distribution filed by the syndics, claiming to be placed thereon as a mortgage creditor for $3800.   She alleges that her mother, who died in Campeachy, Mexico, some time in 1822, left her a house in that town, and a sum of $2800 in specie, which was then received by her husband.   That in 1831, after the insolvent had come to reside in this country, she, with his consent, and through an agent, sold the house for $1000, which sum was also received by him.   That there was no marriage contract between herself and her husband.   That all the property thus inherited was paraphernal, and that by the laws of Spain, which govern in Campeachy, as well as by the laws of Louisiana, she is entitled to a legal mortgage on all the real property of her husband surrendered to his creditors.   On the trial of this opposition the counsel for the opponent moved the court for a continuance, on the ground that she had previously obtained an order for a com-

mission to examine witnesses residing at Campeachy to prove the facts on which her claim was based, and that without this testimony she could not safely go to trial. The counsel for the syndics then admitted her right of mortgage for $1000, but objected to the continuance being granted, on the grounds, that the testimony by which she expected to prove that the insolvent had received $2800 from her mother's succession in 1822, before he took up his residence in Louisiana, was irrelevant, inasmuch as, under such proof, she would not be entitled to the mortgage she claims ; and that there being no funds coming to the ordinary creditors, it was useless to wait for the return of the commission. The judge having sustained this objection, and refused the continuance, the opposing creditor took a bill of exceptions to his opinion, and afterwards appealed from the judgment allowing her claim only for $1000.

*Bodin*, for the appellant. Where there is no marriage contract between the parties, the law of the matrimonial domicil has been held to control and govern the rights to property wherever situated. At least such is the opinion of many eminent jurists. Story's Conflict of Laws, § 152. Others have considered the law of the place where the marriage is celebrated, as being a *real* statute, the effect of which cannot be supposed to have been impliedly adopted by the contracting parties, but as to property within the territory where that law has any force. Consequently, as to immoveables, the rights of the husband and wife are determined by the law of the *situs*. *Saul* v. *His Creditors*, 5 Mart. N. S. 569.

Let us apply both doctrines to the present case, and examine the rights of the opponent on the supposition that no change of domicil had ever taken place.

She had a claim against her husband for $2800, as a portion of her paraphernalia. The law of the matrimonial domicil gave her a tacit mortgage on the property of her husband, to guaranty the reimbursement of that claim. According to the system, which applies the law of the place where the marriage was celebrated to all property wherever situated, she could exercise an hypothecary right on property owned in Louisiana by her husband.

Adopting the contrary opinion, that the law of the matrimonial domicil shall only bind the parties, as far as that law extends, but

no farther, then by what shall we be governed? Surely by the *lex rei sitæ*, which provides that the wife shall have a general mortgage, for the restitution of the extradotal rights, on the immoveables of her husband.

Had Prats not changed his domicil, his wife could, under either doctrine, recover against his creditors here, with mortgage and privilege.

Can a change of domicil from Campeachy to New Orleans diminish her rights?

*L. Janin*, contra. This case presents the question, whether the opponent has a tacit mortgage for her paraphernal rights on property received by the husband before they became inhabitants of Louisiana, and whether this mortgage can be enforced to the prejudice of the creditors by judicial mortgage? The Spanish law is not applicable to this case. By the law of Louisiana the opponent can claim no preference and mortgage on property in this State.

The laws which give a mortgage to the wife on the property of her husband, are real statutes. "Real statutes are those which have principally for their object property, and which do not speak of persons, except in relation to property." Story, Confl. of Laws, p. 12, § 13. It was decided in *Saul* v. *His Creditors*, 5 Mart. N. S., 606, that the law of the Fuero, giving to the wife one-half of the community, was a real statute, because it relates more to things than to persons. Rodenburg, cited by Judge Story, p. 268, § 322, speaks expressly of the case of the wife's mortgage, and says "that it does not extend to the property of the husband situated in a foreign country, *because the statute is real* and cannot have an extra-territorial authority. *Consequenter non tacita seu legalis hypotheca adstringit bona alia, quam quibus lex poterit imperare; ea nimirum, quæ legislatoris territorio sunt supposita, cujus solius loci legis est, tanquam statuti realis, realem in rebus effectum producere, cum alterius judicis auctoritas non efficiat hypothecam.*" Hertius says that in matters of preferences and privileges of creditors, "if the controversy respects immoveables, the law of the country of the *situs rei* is, without doubt, to govern." Story, p. 270, § 325, 326. Elsewhere Rodenburg says, "what does not arise from the act of man, but simply from the authority of the law, of which sort all privileges of preference among creditors are, it should be

said, that the authority of the legislator has no effect upon proper-
ty not subjected to him, when the controversy respects the inter
est of third persons, or of other creditors, who have not contracted
in that place, and who consequently have submitted themselves to
the laws of that place." Story, p 270, § 325. f. The numerous and
long extracts collected in Story's second edition (p. 270), referring
to the same subject, show an unusual unanimity among the ci-
vilians, and perfect harmony between the civil and the common
law on this elementary question.

But no where is the necessity of confining the operations of
real statutes, affecting the property of husband and wife, to the
territory of the legislator, more convincingly shown than in the
decision of this court in the case of *Saul* v. *His Creditors.* In
that case it was contended, that the husband and wife must be
supposed to have tacitly embodied the law of the place where
they contracted marriage with their implied contract, and that it
must, therefore, be presumed that they intended to be governed by
this law, wherever they went to reside. But the court said that,
granting the premises, the consequence would not follow, as far
as regards the real property acquired by the parties out of the
place where they were married. These laws are real statutes.
The implied agreement, to consider them as part of the marriage
contract, can not have a more extensive operation than the law it-
self. As real statutes they have no effect beyond the State where
they were passed. The consent of parties cannot change them
into personal statutes, and give them an ubiquitous operation.
These statutes do not purport to regulate the property which the
parties may acquire in another country. Their insertion in the
contract would be nothing more than a declaration, that while *re-
siding within that State,* their property should be governed by
them. 5 Mart. N. S. 603, 604, 605.

In an analogous manner it is contended by the opponent in this
case, that when Prats and the opponent were married in Yucatan,
they must be understood to have tacitly agreed, that the parapher-
nal rights of the latter should be secured by a legal mortgage on
her husband's real estate, wherever he might acquire any, and to
whatever country he might remove. This pretension is refuted by
the reasoning employed by this court in *Saul* v. *His Creditors.*

JUNE, 1842. 505

Prats v. His Creditors.

A familiar case will show how unfounded such pretensions are. If they could be admitted, real estate in Louisiana, acquired by persons residing in Great Britain or the northern States, would be subject to rights of dower and courtesy. But such claims have never yet been set up. As foreign laws, and the rights claimed under them, are not binding, *proprio vigore*, beyond their natural territory, they must be enforced or disregarded according to the sound discretion of the court, and from considerations of public convenience. Story, Conflict of Laws, p. 203, § 244, says:

" But there is an exception to the rule, as to the universal validity of contracts, which is, that no nation is bound to recognize or enforce any contracts, which are injurious to its own interest, or to those of its own subjects. Huberus has expressed it in the following terms : *Quatenus nihil potestati aut juri alterius imperantis ejusque civium præjudicetur ;* and Mr. Justice Martin still more clearly, in saying, that the exception applies to cases in which the contract is immoral or unjust, or in which the enforcing it in a State would be injurious to the rights, the interest, or the convenience of such State or its citizens."

The controversy must, therefore, be settled by the law of this State. This law gives a mortgage to the creditors who have recorded their judgments. It also gives a tacit mortgage to the wife to secure her dotal and paraphernal rights ; but that mortgage, so far at least as it is tacit and exists without recording, must be confined to persons who contract marriage in this State, or who come to reside here. The mortgage exists only as an accessory to a principal contract. The law of Louisiana provides only for Louisiana contracts. When the marriage is contracted here, the parties are properly forming a Louisiana contract. When, after marriage, they remove to Louisiana, they voluntarily subject themselves to the laws of Louisiana ; but in this case, it is only for acts posterior to their removal, that they can claim to be governed by our laws. But until their removal to Louisiana, the relations which spring from their marriage are foreign contracts, which must be determined by the foreign law ; and it has been shown that when that is a real statute, it cannot be permitted to take effect in Louisiana. Let us suppose that the opponent had come from a country which did not recognize tacit mortgages. She

Vol. II.                        64

could certainly not claim a mortgage, after her arrival, for the re-imbursement of property .which her husband had received before it.    This would be an attempt to give an *ex post facto* effect to the law.    And although the law of Mexico grants a tacit mortgage to the wife; the case is not different, when, as has been shown, the benefits of that law do not follow the opponent beyond the limits of Mexico.

If this suit presented a question of conflict between a domestic and a foreign law, we should confidently rely upon the familiar principle, that " there can be no pretence to say that any foreign nation has a right to require the full recognition and execution of its own laws in other territories, where those .laws, are deemed oppressive and injurious to the rights or interests of the inhabitants of the latter.    Story, pp. 32, 37, 271.

The inconveniences of tacit mortgages are daily felt.    They would be intolerable, if they resulted from facts anterior to the ar-rival of a foreign husband or tutor.    When the debtor resides in this State, at the time of subjecting himself to a tacit mortgage, it is, generally, possible to ascertain, with more or less accuracy, the danger which threatens persons contracting with him.    But if he should be suffered to arrive here with a tacit mortgage infecting every piece of real property he may touch, our citizens would be exposed to constant and unavoidable deception.

Morphy, J.    This case presents a question which is by no means free from difficulty and doubt, and which has been the subject of learned discussion and great diversity of opinion among the most eminent jurists of France.    We have to determine, whether there exists a legal mortgage in favor of foreign minors and married women, on the immoveable property belonging to their tutors or husbands situated in Louisiana.

It is admitted that, by the Spanish law, which was in force in Campeachy in 1822, the restitution of the wife's paraphernal property is secured by a tacit mortgage on the real estate of her husband.    As it seems to be conceded, on all hands, that this controversy must be decided by the laws of Louisiana, where the property to be distributed is situated, it appears to us quite im-material to know or inquire what the law of Mexico provides on this subject.

The counsel for the appellant relies on article 2367 of the Civil Code, which gives a legal mortgage on the property of the husband for the reimbursement of the paraphernal rights of the wife. This provision, he says, is general, and was never intended to be restricted to any particular class or category of married women ; that this legal mortgage must, therefore, enure to the benefit of every married woman, wherever her marriage may have been celebrated, and at whatever time or place the property, the reimbursement of which is claimed, may have been received. In support of this position, he has referred to Troplong, vol 2, Nos. 429, and 513 *ter*, of his treatise Des Privilèges et Hypothèques. This distinguished writer, proceeding upon the principle that the law which in France subjects the property of tutors and husbands to a tacit mortgage is a *real statute* (*statut réel,*) holds, as a necessary consequence, that foreign minors and married women have a legal mortgage on the property of their tutors and husbands situated in that country, because, says he, the peculiar character and true effect of a *real statute* is to operate upon and regulate immoveable property, without reference to the persons owning the same. Merlin, *verbo*, Remploi, T. 17, seems to hold the same doctrine, while Duranton and Grenier, authors equally respectable, maintain the opinion that foreign minors and married women have no legal mortgage on the property of their tutors and husbands in France. 19 Duranton, 418. 1 Grenier, Des Hyp. § 284.

It is true that the main reason given by these last mentioned jurists in support of their opinion, can have no weight or application with us. They say that the mortgage is an institution of the civil law, and that by articles 8 and 11. of the French Code, a foreigner is not entitled to the enjoyment of civil rights in France, except so far as they are secured to Frenchmen in the country to which such foreigner belongs ; and that no contracts passed in a foreign country can create a mortgage on property in France, unless there be some provision to that effect in the political laws or public treaties. Art. 2128. According to these writers, no legal mortgage would result from a marriage between two foreigners, even if celebrated in France, the legal mortgage being a civil right given to Frenchmen only. No such restrictions are known to our laws, which place our citizens and foreigners on the same

footing as to the enjoyment of civil rights and privileges ; and a marriage celebrated here between two foreigners, would produce the same legal effects as if it had taken place between two of our own citizens. But while we acknowledge this, we are by no means prepared to adopt, without any limitation, the doctrine held by the learned Troplong. The very principle upon which he builds it may, perhaps, be doubted. The legal mortgage in favor of minors and married women, is not created for the preservation of the property it affects, but for the security of a personal action of which it is an accessory. The main object of such a law is the protection of these persons, not the regulation or preservation of the property itself. But, be this as it may, the consequences to which such a doctrine must lead in a country like this, are too injurious to the rights, the interests, and the convenience of our citizens, to be for a moment tolerated, unless such consequences be forced upon us by some stern and unbending provision of law. It is well known that a large amount of property is held in Louisiana by non-residents, who have never come to this country, or who have left it never, perhaps, to return. Such property, under the doctrine contended for, would be subject to the tacit mortgages of the wives which such non-residents may have successively had, or of the minors to whom they may have been appointed tutors, in the countries where they reside. How extremely difficult, if not impossible it would be, for our citizens to ascertain those secret rights or incumbrances, or even the very facts which give rise to them? The inconveniences resulting from tacit mortgages in this State, are daily and deeply felt, notwithstanding the precautions taken by law to lessen the difficulty and danger attending them. The evil would become intolerable, and our citizens be exposed to constant and unavoidable deception, if these hidden liens could exist without even the slight protection afforded by these precautions, which, from their nature, can apply only to the inhabitants of the State. After an attentive examination of the provisions of our Code which establish mortgages in favor of minors and married women, we have come to the conclusion, that such mortgages, at least so far as they are tacit and exist without being recorded, were intended to be confined to persons who marry in this State, or receive their appointments as tutors

from our courts, or who, after marrying or receiving such appointments abroad, come to reside here; and that, in the latter case, such tacit mortgages exist only for sums received since their removal into this State. Article 3299, which immediately follows the one providing that these mortgages shall exist without being recorded, enacts, that " the tutors and curators of minors, interdicted, and absent persons, as well as husbands, are bound to render public the legal mortgages with which their property is burthened, and, for this purpose, to require that the acts on which these mortgages are founded, shall be recorded without delay in the office provided for that purpose." The following article, 3300, provides, that " husbands and tutors who have neglected to cause to be made the recording directed in the preceding article, and shall have granted or allowed to be taken any privilege or mortgage on their immoveables and slaves, without expressly declaring that their property was subjected to the legal mortgage of their wives, or of the persons above mentioned whose property they are administering, shall be considered guilty of fraud, and shall pay to the party suffering by it such damages as the nature of the case may require."

Article 3304 further enacts, that " in case of neglect on the part of husbands, tutors, subrogated tutors, and curators, in causing to be made the recording ordained by the preceding articles, it may be demanded by the relations of the husband or of the wife, and by the relations of the minor, interdicted, or absent persons, or in default of relations, by their friends. It may even be demanded by minors or married women without any need, on the part of the latter, of authority from husbands or judges."

These, and other provisions of the Code on the same subject, clearly apply only to persons residing in the State. They repel the idea that the law-giver ever intended to extend the same extreme favor to non-resident wives and minors, whose rights would forever remain a mystery to our citizens. The removal of the opponent, with her husband, into this State, placed her under the protection of our laws for the future. It entitles her to a tacit mortgage, for all moneys he may have since received for her account; but to extend back this mortgage so as to cover funds received by the insolvent in 1822, while he resided in Campeachy,

woüld be to deçlàre, at once, that a tacit mortgage exists, even though the husband, the wife, the tutor, or the ward, never were in Lòuisiana. Such a mortgage we cannot recognize, nor do we believe it was ever contemplated by our laws. We, therefore, conclude, that the judge correctly overruled the motion for a continuance, on the ground that the evidence sought to be obtained was irrelevant, inasmuch as it would not have entitled the appellant to the mortgage claimed.

*Judgment affirmed.*