Hyman, Lichtenstein & Co. vs. Schlenker & Hirsch.

The accused have not shown any ground upon which they can be relieved.

Judgment affirmed.

No. 10,869.

HYMAN, LICHTENSTEIN & CO. VS. SCHLENKER & HIRSCH.

MRS. C. SCHLENKER VS. WM. ROBB, SHERIFF, ET AL. (CONSOLIDATED).

1. A *dation en paiement* between husband and wife can only be made by authentic act, and when the consideration is explicitly stated in the act, the parties are bound thereby and can not make proof of other and additional consideration, unless upon allegation and clear proof of error in the confection of the act by the notary.

2. The same tests are applied in establishing change of domicil from this to another State, as from one parish to another. These tests are: (1) Actual residence in the new place; (2) the intention to fix there the principal establishment. These tests applied to the facts establish Schlenker's domicil at Natchez, Miss., since 1883.

3. Marriage creates a civil status which is governed and controlled by the. law of the domicil of the parties.

4. The statutes regulating the privileges and disabilities attaching to the status of married women are purely domiciliary in their character, and, unless otherwise expressly declared, do not affect married women domiciled in another State.

5. Personal property has no locality, and, as to the rights of husband and wife therein, is governed by the law of their domicil. Moneys of the wife domiciled in Mississippi, though received in Louisiana, belong to her as a citizen of Mississippi and do not acquire the character or incidents of paraphernal funds under Louisiana law. If converted by her husband, she has no mortgage on his property in this State for their restitution, nor can she receive from him a *dation en paiement* to the prejudice of attaching creditors, citizens of this State.

6. The "returning to the domicil where her marriage was contracted" which authorizes a non-resident wife to sue her husband for separation of property under Art. 2437 C. C.,'means a return for the purpose of living there under the protection of its laws.

7. In such action, in any case, the relief would only extend to the rights of the parties as they stood at date of return.

APPEAL from the Seventh District Court for the Parish of Cata-houla. *Ellis, J.*

*J. N. Luce, Gus. Lemle, D. N. Thompson* and *Farrar, Jonas & Kruttschnitt* for Plaintiffs and Appellants:

1. The objection of plaintiffs to parol evidence to establish a consideration different from the consideration expressed and described in the *dation en paiement* was well taken. That objection was: "Parol evidence can not be admitted

Hyman, Lichtenstein & Co. vs. Schlenker & Hirsch.

against or beyond what is contained in the alleged *dation en paiement* of intervenor's husband to her; nor what may have been said or done before, at the time of, or since making said act; nor to vary, contradict, explain, or modify the written terms, consideration or recitals of said act; nor to show a source or origin of consideration different from that expressed in the instrument. That such evidence, if otherwise admissible, could not be introduced by intervenor who has claimed under said act; that it is not admissible under the pleadings, there being no averments of such facts, and can not be introduced to affect plaintiffs, who are third persons and can only be bound by the record."

(a) On contradicting, altering, explaining, etc., written act: R. R. C., 2275 2428; 3 An. 280; 34 An. 690; 38 An. 736; 39 An. 387.

(b) Not admissible under the pleadings. 2 Hennen, p. 1155 (c) No. 3; 5 M. 623; 7 M. 221; 8 N. S. 264; 2 La. 401; 12 La. 105.

(c) Having declared on a written act, parol evidence not admissible. 8 N. S. 346; Cohn vs. Levy, 14 An. 355; 40 An. 47.

(d) Having claimed under *dation*, she can not assail or contradict it. 3 An. 280.

2. Testimony not sufficient to establish intervenor's claim as existing prior to or since 1878. R. C. C. 2277, 2282; 6 R. 36; 6 La. 22; 11 La. 559; 12 La. 302; 3 An. 142; 6 An. 735; 28 An. 531; 37 An. 95, 380, 857; 38 An. 750.

(a) The Zenor plantation was purchased burdened with a mortgage, and was sold to satisfy such mortgage indebtedness of husband.

(b) Intervenor can only claim real value of property sold plaintiffs and such amounts as were actually received by her husband.

(c) Rents:

(1) There being no separate administration, the rents fell into the community. R. C. C. 2435; 29 An. 335; 30 An. 552.

(2) The wife was an ordinary creditor for any rental claim. 27 An. 552.

(3) Rental claim barred, or husband not chargeable therewith nor accountable therefor under Section 1176, page 42, Miss. Code of 1880.

(4) Claim for rents not established.

(5) Any rents subject to deductions for taxes, insurance, investments, bank account, repairs, improvements, etc.

3. The *dation en paiement* of 1878 extinguished the wife's alleged paraphernal claim, and the subsequent sale of properties acquired under *dation* of 1878, in settlement of her husband's debts, would not revive or renew or constitute a paraphernal claim, and if a creditor therefor, she was but an ordinary creditor. 1 An. 303; 2 An. 483; 4 An. 65, 466; 21 An. 367, 466; 26 An. 375; 27 An. 550; R. C. C. 1790, 2446.

4. The intervenors, husband and wife, being domiciliated in and residents of Mississippi since 1883, the receipt and conversion of the wife's moneys in Mississippi would constitute the wife only an ordinary creditor therefor, and not being a paraphernal claim, the insolvent husband could not therefore sell to the wife to the prejudice of his domestic creditors.

(a) On domicil: R. C. C. 42, 46, 11 La. 178; 2 An. 946; 4 An. 554; 9 An. 167; 29 An. 253; 32 An. 679; 33 An. 911.

(b) On conversion in Mississippi: 2 R. 501; 4 An. 65; 10 An. 440; Eager vs. Brown, 14 An. 694; 6 An. 703; 12 An. 89.

(c) On conflict of law: Articles R. C. C. 2390, 2399, 2400, and kindred articles es-

Hyman, Lichtenstein & Co. vs. Schlenker & Hirsch.

tablishing and regulating community property rights, are real and not personal statutes. Saul vs. His Creditors, 5 N. S.; 4 La. 190; 9 R. 443.

5. Though intervenors' claim should be found to be in its nature paraphernal, the intervenors being admitted non-residents at the time of the *dation* assailed, could not avail themselves of laws enacted for the protection of Louisiana married women, especially as Mrs. Schlenker had unlimited capacity to contract under the law of her domicil.

(*a*) On Mrs. Schlenker's capacity to contract: Saul ys. His Creditors, 5 N. S. pages 590, 594, 597, 603 and 604; 2 R. 501; 5 R. 475; 8 R. 416; 13 La. 182; 3 An. 417, 427; 5 An. 372; 11 An. 232; 12 An. 89; Mississippi Code of 1880, Sections 1667, 1168, 1169.

(*b*) Our laws on rights of married women, enacted for protection of Louisiana married women: 29 An. 503, overruling 20 An. 383, and affirming 12 An. 89; 2 R. 501; 2 An. 2; 4 An. 570; 6 An. 437, 703; 10 An. 440; 12 An, 89; 30 An. 749, 750.

6. Our courts will not sacrifice justice to courtesy and maintain a fraudulent sale of personal property situated in Louisiana to the prejudice of domestic creditors. 2 N. S. 93; 17 La. 591; 19 La. 589; 5 An. 678; 13 An. 280.

The value of the property conveyed to wife should not exceed the amount due. 8 An. 485, Gardner vs. Thibodeaux; 14 An. 742; 30 An. 750. The sale as to the merchandise not divisible. 1 An. 305; 23 An. 441.

---

*Percy Roberts* and *J. L. Dagg* for Intervenor and Appellee:

1. A dation made by the husband in favor of his wife, can not be attacked by one who was not a creditor of the husband at the date of the dation. See 39 An. 780,

2. One who purchases property from a wife can not assail her title to said property. See 15 An. 531 and 684; 30 An. 590.

3. The use of the wife's property by the husband to pay a debt due by the commercial firm of which he is a member creates a debt against him in favor of the wife.

4. It is not necessary to the validity of a dation made by the husband in favor of the wife, that the wife should have a privilege or mortgage on the property transferred by the dation. See 33 An. 534; 34 An. 995.

5. It is not necessary for a wife to obtain a judgment of separation of property in order to justify a dation in her favor. Such a dation can be made before or after such a judgment, and may be made without such judgment. See 3 An. 485; 30 An. 750; 33 An. 534 and 821; 34 An. 995.

6. The burden of proof is on the one who alleges a change of domicil, and in order to prove such change it is necessary to show not only a new residence, but also the intent to acquire another domicil. See 2 An. 946; 7 An. 395; 9 An. 165; 20 An. 312; 23 An. 1304; 26 An. 515.

7. Where a husband and wife have been married in Louisiana, and the husband removes to, and resides in a foreign state, the wife retains the same rights and remedies, as against her husband, for the protection and the restitution of her paraphernal effects, as if she had continued to reside in this State. See Civil Code, Article 2437.

8. The right of a wife who has been married in Louisiana to receive by a dation from her husband the payment of a debt in her favor, arising from his appropriation in this State of her property, situated in this State or the proceeds of such property, is not affected by the laws of any foreign state in which she happens to be residing at the time of said dation.

Hyman, Lichtenstein & Co. vs.-Schlenker & Hirsch.

9. The courts of Louisiana will not enforce the law of another State in regard to the transfer of property situated in this State, when the effect of such foreign law would be to defeat a statute of this State, in favor of a wife who was married in Louisiana.

10. The making of a dation by the husband in favor of the wife will not impair his right to make a subsequent dation in her favor, provided there exist, at the date of the subsequent dation, a *bona fide* debt in favor of the wife.

11. Parol, or other evidence *aliunde*, is admissible to show the real consideration of a written contract, although it may show a consideration other and different from that set forth in the writing. See Wharton on Evidence, pp. 540 and 1044; 26 An. 545; 32 An. 432; 36 An. 548; 45 An. 560; 38 An. 846.

12. Where a certain consideration is expressed in an act of sale, and no other consideration is proved, it will be presumed that the consideration thus expressed is the true one.

13. The testimony of one witness in regard to an alleged sale, and the disposition of its proceeds, accompanied by the act of sale, is sufficient to prove the same, although the sum involved is over $500. See 1 N. S. 614.

14. The fact that the husband, at the date of the sale, or the lease of the wife's property, was administering that property, either as head of the community or as the agent of the wife, raises a presumption that he received the proceeds of said sale or of said lease, and a consequent indebtedness, to that extent, to the wife. See 4 N. S. 409; 6 An. 592.

15. The act of the husband in buying property and taking the title to the same in name of the wife, without the proved knowledge of the wife, does not raise a presumption that the said property was accepted by the wife as a giving in payment, in discharge of a debt due her by the husband.

16. The obligation of the wife to bear a portion of the marital expenses out of the income of her paraphernal property, when she has reserved the administration of the same, is a personal debt in favor of the husband, of which no third person can avail.

---

The opinion of the court was delivered by

FENNER, J. This appeal presents, for our determination, a contest between the attaching creditors of a non-resident debtor and the non-resident wife of the debtor, who claims the property attached by virtue of a *dation en paiement* made to her by her husband while they were both non-residents of Louisiana and domiciled in the State of Mississippi.

The dominant facts are the following:

· Isaac Schlenker and his wife, Mrs. O. Schlenker, were married at their domicil in Trinity, Louisiana, in 1859. Between the years 1866 and 1874, while they were still domiciled in Louisiana, Mrs. Schlenker claims to have received from an uncle and from her mother certain paraphernal gifts of money and goods amounting to about $7600, which her husband took possession of and converted to his own use.

In 1878, her husband executed a *dation en paiement* in her favor, by which he conveyed to her various pieces of landed property, including:

1. A tract of land known as the Elba or Zenor tract.

2. Sundry lots and buildings situated in the towns of Troy and Trinity.

The attaching creditors attack the consideration of this *dation*, and if proof thereof were required, that found in the record is certainly not as conclusive as it should be; but we think the creditors, having become such long after the *dation*, have no right to attack it. Lewis vs. Peterkin, 39 An. 780.

Subsequently Mrs. Schlenker alienated several of these properties, and the sums are claimed to have been appropriated by her husband to the payment of his debts.

These alienations were as follows, viz.:

1. In June, 1878, she conveyed the Zenor tract for the price of $3500.

2. In March, 1881, she conveyed the Cates or Rawlings lots in Troyville, on which the price actually realized was $350.

3. In 1888 she sold a storehouse and lots in Troyville and a residence and lots in Trinity for $2500.

She also claims to have sold another lot in Trinity to McCabe for $100, but the deed is not produced.

In December, 1890, Isaac Schlenker made a second *dation en paiement* to his wife, from which we make the following extract:

" Before me, J. F. Ellis, a notary public in and for Catahoula parish, Louisiana, personally appeared Isaac Shlenker, who declared to me, notary, that he is justly and legally indebted to his wife, Mrs. Charlotte Schlenker, in the sum of seven thousand two hundred and fifty dollars.

\*   \*   \*   " The said above amount being the proceeds of sale of one storehouse and lots in Jonesville (or Troyville), Louisiana; the Cates or Rawlings house and lots in Jonesville, La., and dwelling house and lots in Trinity, La." \*   \*   \*

It thus appears that the only paraphernal debts expressed in the act as intended to be extinguished are those arising from the appropriation by the husband of " the proceeds of sale " of the particular pieces of paraphernal property therein mentioned.

Hyman, Lichtenstein & Co. vs. Schlenker & Hirsch.

As we have seen, these "proceeds of sale," according to the wife's own showing, did not exceed the sum of $2950, while the *dation* conveyed to the wife property estimated in the act itself at $6560, and claimed by the creditors to be worth much more.

On the trial of the case counsel for the wife undertook to eke out the consideration, by parol proof that the *dation* was intended to satisfy other paraphernal claims of the wife besides those expressed in the deed, including the sum of $3500 received as the price of the Zenor plantation, $1100 collected as rents of paraphernal property, and a balance due on the original claim, unsatisfied by the first *dation*, of $621.93.

To such evidence objection was made on the following grounds, viz.:

"Parol evidence can not be admitted against or beyond what is contained in the alleged *dation en paiement* of intervenor's husband to her; nor as to what may have been said or done before, at the time of, or since making said act; nor to vary, contradict, explain, or modify the written terms, considerations or recitals of said act; nor to show source or origin of the consideration, different from that expressed in the instrument. That such evidence, if otherwise admissible, could not be introduced by intervenor, who has claimed under such act; that it is not admissible under the pleadings, there being no averments of such fact, and can not be introduced to affect plaintiffs, who are third persons, and can only be bound by the record."

The judge overruled these objections, and admitted and gave effect to the evidence.

In this we are bound to hold that the judge was in error.

A *dation en paiement* by a husband to his wife can not be made otherwise than by authentic act. The extraordinary and highly exceptional effects given by the law to this contract, exempting it from the revocatory action and maintaining it as a preference over creditors, though made while the husband was insolvent, emphasize the necessity of holding the parties bound by the recitals contained in the act, and not permitting them to enlarge or extend its provisions by parol proof. The creditors, when they took|out their attachment, had no notice of, and were not affected by, any *dation* between this debtor and his wife, except that evidenced by the authentic act

extant upon the records of the parish, and could not be bound by any agreements or understandings between the parties not embodied in that act.    Moreover, the wife herself, in her intervention, propounded that act as her title, and made no allegation of any error therein.

The act specifically recites, as the only paraphernal claims satisfied by the *dation*, the moneys due by the husband for the price of particular properties therein stated.    To hold that other and different paraphernal claims entered into the consideration and were satisfied by the *dation*, on mere parol proof, would be, to that· extent, to give effect to a *dation* by parol.

Even if proof of error were admissible, the proof found in this record is insufficient to establish it.

We dislike to speak with confidence touching the contents of this enormous transcript, which we have been left to eviscerate with hardly any references to pages by the counsel; but if there is any other evidence as to this error except the statement of Mrs. Schlenker herself, it has failed to attract our attention.    She says that the intention of Mr. Schlenker and herself was to have the sale made in satisfaction of all her paraphernal claims, and, on the subject of the deed, she says: "I do not know if the deed properly recites the consideration, not having the same before me, but if it does not, there must have been some error in drawing it up."

Of course, we have nothing from the husband on the subject because he was incompetent to testify.    There is nothing to show that the notary who drew the act did not conform to the instructions given him, or that the parties who signed it did not read and know its contents, nor is any reason given why the alleged error escaped attention.    Surely, it would be a dangerous precedent to allow the recitals by such an act to be varied by the unsupported declarations of error by a single party thereto.    As the deed stood, undoubtedly the paraphernal claims, outside of those mentioned therein, remained unaffected by the *dation;* and, in after years, might have formed a consideration for a third dation when the interests of the parties required it, in which case the statement of the wife as to her intentions might not have been accessible.

We consider the case fully covered by a former decision, where the *dation* having been made in satisfaction of a particular named paraphernal claim, which the court found to be invalid, the parties

ought to sustain it by proof of other valid paraphernal claims, but we held them bound by the consideration stated in the deed. Chaffe vs. Schlen, 34 An. 688.

Having thus defined the meaning and extent of the act as embracing, for its consideration, only the paraphernal claims therein recited, we will next consider the important questions arising from the domicil of the parties.

The attaching creditors are citizens and residents of Louisiana.

It is conceded that at the date of the dation Mr. and Mrs. Schlenker were domiciled in the State of Mississippi. It is claimed, however, on behalf of the wife, that the Mississippi domicil was only acquired in 1889, after the transactions here involved took place, and that, prior thereto, their domicil continued to be in Louisiana.

No doubt, the presumption of law is in favor of the continuance of a domicil once established, and that the party who asserts that it has been changed carries the burden of proof. The evidence of Mrs. Schlenker herself, which is candid and unequivocal, establishes that in 1882 her husband, with his family and the whole of his household effects, removed from their former domicil in Trinity, La., to New Orleans, La., discontinuing the mercantile business which he had theretofore conducted in Trinity, and establishing his residence in New Orleans, where he kept house for a year. In 1883 Schlenker moved with his family to Natchez, Miss., carrying all his household effects, established his residence there, went into mercantile business there, has resided and kept house and transacted business there ever since, and has had no other residence. He has reared his children and married two of them in Natchez. There has been his home. It was not only his principal, but his only domestic establishment.

It appears that in 1881 or 1882 he commenced a mercantile business in Troyville, La., and that he was in the habit of frequently visiting that place to look after his affairs, but he never had a domicil in Troyville and kept no establishment there of any kind. His former residence in Trinity, La., was at first rented, and subsequently sold.

There is proof that he voted at least once in Louisiana, while living in Natchez, and also that he was accepted as a surety on the bond of the sheriff of Catahoula parish. His wife and partner state that he continued to consider Catahoula parish as his home; but there is no

evidence that he ever entertained intention of returning or resuming his residence, there.

The law is chiefly concerned with persons as the subjects of obligations, and, with the view of giving efficacy to their sanctions, one of its first tasks is to *locate* each person—to fix a place at which the person shall be considered as always present, actually or constructively, and where the law can reach him when it has occasion to deal with him—in other words, to establish his domicil.

The provisions of our code on the subject are clear and direct.

"Art. 38. The domicil of each citizen is in the parish wherein he has his principal establishment. The principal establishment is that in which he makes his habitual residence.

"Art. 41. A change of domicil from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.

"Art. 46. Domicil once acquired shall not be forfeited by absence on business, but a voluntary absence of two years from the State, or the acquisition of residence in any other State of this Union, or elsewhere, shall forfeit a domicil within this State."

Applying these provisions of law to the facts of this case, we can not doubt that, from the date of removal in 1833, Natchez, Miss., has been the legal domicil of Schlenker and his wife.

Under a literal construction of the words of Art. 46 that " the acquisition of a residence in any other State of this Union shall forfeit a domicil within this State," the case would be too clear for discussion, since no one could doubt that Schlenker acquired a residence in Natchez. But we think the article should not be so strictly construed, and that the legislator meant the acquisition of such a residence as is mentioned in the prior Art. 41, *i. e.,*'one which combines "the act of residing" with "the intention of making one's principal establishment there." In other words, Art. 46 subjects the change of domicil from this State to another to the same tests which Art 41 applies to change of domicil from one parish to another.

These tests require two elements, viz: (1) Actual residence in the new place; (2) The intention to fix there his principal establishment.

The French law applies the same tests. C. N., Art. 103.

Says Laurent: "The principle that a mere transient cause which has induced a person to establish a temporary residence elsewhere

does not give him a new domicil must not be extended so far as to hold that one who establishes himself in a new place, with the intention of returning to the old, preserves, by that fact alone, his former domicil. It is the nature of the establishment that decides the question; it must be the *principal establishment* in order to fix a new domicil. But if it be the principal establishment, that operates the translation of domicil, even though there be an intention of returning." 2 Laurent, No. 79; 1 Mourlon, Nos. 325, 326, 327.

The French code does not define the words "principal establishment." Our code expressly declares: "The principal establishment is that in which he makes his habitual residence."

Said this court: "The law which fixes the domicil of each citizen at the place where his principal establishment is situated means the principal domestic establishment." Suc. of Franklin, 7 An. 400.

Again: "It is there he sleeps, takes his meals, has established his household, and surrounded himself with his family and the comforts of domestic life. His dwelling house there is emphatically his permanent home." 4 An. 554.

The evidence in this case, as we have stated it, establishes, beyond a doubt, that Schlenker fixed and intended to fix his principal establishment, his habitual residence, his home, in Natchez—not for any transient purpose of health or convenience, but in permanence, as indicated by his entering commercial business there, and by his whole conduct. He had, in fact, already abandoned his domicil in Catahoula parish, when he removed to New Orleans with his family and household effects and established himself there. There is no pretence that he ever intended to return to New Orleans, his last domicil in this State. There is none really that he intended to return to Catahoula; but if he did, he would have had to establish a new domicil there, which could not be done without an actual residence.

This is not a case like Steele's case, where the party preserved two establishments, and where the purposes for which he placed his family in Natchez were clearly shown, and the intention to preserve his domicil at the establishment which he kept in Tensas parish is fully proved.

We then said: "We do not wish to be understood as saying that, in order to have a domicil at a particular place, it is unnecessary there to have a residence, actual or constructive, with a representa-

tive living therein, at which and on whom, in case of absence there-
from, legal process can be served.    However that may be, it is es-
tablished that the defendant had such a residence in the parish of
Tensas, at which service could have been legally made." State ex
rel. Attorney General vs. Steele, 33 An. 912.

The rules which govern the change of domicil from this State to
another are the same which apply to such a change from one parish
to another, and we think no one could doubt that, if Schlenker had
established a home in another parish similar to that adopted in
Natchez, it would be held to establish a new domicil.

It thus appears that at the time when the dation was made, and
also at the time when he received and converted to his use much
the larger portion of the personal funds of his wife, which form the
consideration thereof, both husband and wife were residents and
citizens of the State of Mississippi, and not of the State of Louisiana,
and the question is whether such a *dation*, made on such a consid-
eration, is protected by the law of Louisiana, especially when con-
flicting with the rights of resident creditors.

Marriage creates a civil *status*.  Each State attaches to this *status*
such privileges and disabilities as it deems wise and proper, but
these laws are purely domiciliary in their operation, and apply only,
as a general rule, and when not otherwise expressly provided, to
citizens of the State, or to acts done while they are citizens.   When
married persons remove to a different State their married *status* is
governed and controlled by the laws of the new domicil.

The law of Louisiana attributes to the *status* of marriage certain
peculiar privileges and restraints.   It establishes a community of ac-
quests and gains between the spouses; it gives to the separate prop-
erty of the wife the character of dotal or paraphernal property; it
protects such property from depredation by the husband by giving
the wife a mortgage and privilege on all the property of the husband
for the restitution of her dotal effects converted by him and a mort-
gage for the restitution of her paraphernal effects so converted; it
authorizes the wife, in certain cases, to bring suit against her hus-
band for a separation of property, wherein she may not only obtain
a dissolution of the community and a protection of her future sep-
arate earnings; but may recover judgment for her paraphernal or
dotal funds appropriated by him, which may be executed against all
his property, and it authorizes the wife, with or without such judg-

ment, to receive from the husband a *dation en paiement* in satisfaction of her paraphernal or dotal rights, which is valid against creditors even though, when made, the husband was utterly insolvent. There is no greater reason why this exceptional privilege of *dation* should be enforced in favor of non-resident married women than there is to recognize their rights of mortgage and privilege, which are not more exceptional. Yet in dealing with the question whether there existed a legal mortgage for paraphernal funds on the husband's property in this State, this court, after quoting the provisions of law, said:

" These, *and other provisions of the Code on the same subject,* clearly apply only to persons residing in the State. They repel the idea that the law-giver ever intended to extend the same extreme favor to non-residents, wives and minors, whose rights ever remain a mystery to our citizens.

"The removal of opponent, with her husband, into this State placed her under the protection of our law for the future. It entitles her to a tacit mortgage for all moneys her husband may have received since, for her account, but to extend back this mortgage so as to recover funds received by the insolvent in 1822, when he resided in Campeche, would be to declare at once that a tacit mortgage exists, even though the husband, the wife, the tutor, or the ward, never were in Louisiana. Such a mortgage we can not recognize, nor do we believe it was ever contemplated by our laws." Prats vs. Creditors, 2 Rob. 501.

In considering the same question in a subsequent case, the court said:

" But every law must be construed, not only with reference to the policy which dictated it, but in connection with similar legislation on the same subject. In imposing such incumbrances upon real estate as that which necessarily result from legal and tacit mortgages, the Legislature evidently contemplated the protection of a class of persons who were unable to protect themselves, and whom they were, therefore, bound to protect. For this reason they have subjected the rights of *their own citizens to incumbrances* which, though of doubtful policy, it can not be supposed were intended to operate in favor of those whom it was no part of their *duty to protect.*

"It is the duty of the State to protect its own widows and orphans, and those of its own people who are laboring under legal incapacities."

Continuing, the court said:

" But from a review of the various articles of the Code, on the subject of legal mortgages, it appears to us they point conclusively, not only to the supposed residence in the State of the party whose property is sought to be subjected to their operation, but to the security of a debt originating in the State. The whole tenor of our legislation on this subject appears to us to repel the idea that it was in contemplation of the Legislature to extend the operation of our system of mortgages to cases where the debt itself originated out of a State at a time when the debtor was also a non-resident." Stewart vs. Creditors, 12 An. 89.

Moreover, the right of the wife to enter into such a contract with her husband as this dation, is confined to the case where it is made for the restitution of her dotal or paraphernal effects alienated by him. And it can not be said that the consideration in this case was of that character. The consideration is for personal funds of the wife, received and converted by the husband, while he and his wife were residents of Mississippi. That these funds were personal property does not admit of question, and it is a well-settled rule that personal property has no locality, and is governed exclusively by the laws of the owner's domicil as to its character, transfer, alienation, etc. 3 Am. and Eng. Encyc. of L., pp. 574, 575, and authorities cited.

*Mobilia ossibus inherent et personam sequuntur.*

These funds, though accruing to the wife in Louisiana, were received by her as a citizen of Mississippi, and her rights thereto were governed by the law of Mississippi. They never acquired the character of paraphernality under the law of Louisiana, and the husband's conversion of them subjected him only to the liability imposed by the law of the domicil.

It is urged, however, by the learned counsel for the wife that these general principles are controlled by the special provision of Art. 2437, of our Civil Code, which is as follows:

" Whenever a marriage shall have been contracted in this State, and the husband after said marriage shall remove or shall have removed to a foreign country with his wife, if the husband shall behave toward his wife in such foreign country in such a manner as would entitle her, under our laws, to demand a separation of property, it shall be lawful for her, on returning to the domicil where

her marriage was contracted, to institute a suit there against her husband for the purpose above mentioned, in the same manner as if they were still domiciled in said place. In said case an attorney shall be appointed by the court to represent the absent defendant. The plaintiff shall be entitled to all the remedies and conservatory remedies granted by the law to married women, and the judgment shall have force and effect in the same manner as if the parties had never left the State."

We are of opinion that this article is inapplicable, for two reasons:

1. The wife here has not *returned* " to the domicil where her marriage was contracted," within any reasonable intendment of the law. It is true she came to Louisiana and accepted this *dation* and returned immediately to her domicil in Mississippi.

The law obviously means a return to the domicil for the purpose of living there under the protection of its laws, and was intended only to dissolve the community, which Arts. 2399 and 2400 C. C. extend in favor of non-residents, and to protect her property and her future earnings from control or interference by her husband. This is rendered more clear by reference to the origin of the article. It is taken from Act No. 9 of 1855, which is as follows:

" That whenever a marriage shall have been contracted in this State, and the husband, after such marriage, shall remove or shall have removed to a foreign country with his said wife, and shall behave or have behaved toward his wife in said foreign country in such a manner as would entitle her, under our laws, to demand *separation from bed and board, or a separation of property*, it shall be lawful for her, on returning to the domicil where her marriage was contracted, to institute a suit there against her husband for the purposes above mentioned, in the same manner as if they were still domiciliated in said place," etc.

The compilers of the Code of 1870, in distributing these provisions to their appropriate headings, separated the provisions relating to separation from bed and board and those relating to separation of property into two distinct articles, viz.: the above Article 2437 and Article 142. But these articles must still be construed together, and it is apparent that the same kind of removal to the former domicil is required to support an action for separation of property as to support one for separation from bed and board and consequent

divorce.   It would hardly be supposed that a married woman domiciled in Mississippi could run over into the State of Louisiana for a day, without any intention of remaining here or resuming her residence, institute an action for a separation from bed and board leading to divorce, return instantly to her Mississippi domicil, and claim a decree in such a case, that any court in christendom would grant or respect.   We had occasion recently to consider the rights of a married woman in such a case and the limitations upon her right to invoke the jurisdiction of her original matrimonial domicil.  Smith vs. Smith, 43 An.

No such case was contemplated by the law, which only intends to extend its protection to women married here, whose husbands domiciled in another country had so mistreated them as to justify them in leaving the matrimonial domicil and in returning to their former homes to live under and to receive the protection of its laws.

2. Even if the return to the domicil were sufficient, the statute would not cover this case.   It is confined to an action for separation of property, and in such action the relief could only extend to the rights of the parties as they stood at the date of the return.   It could not authorize a judgment against the husband for paraphernal funds based on claims for personal property converted by him, while husband and wife were both domiciled in Mississippi, and which, therefore, acquired no paraphernal character.   It could not recognize a mortgage for such claims, nor would it support a *dation* in satisfaction thereof to the prejudice of creditors.

The only proper pertinency of this statute is to demonstrate that, outside of its exceptional provisions, the views we have herein expressed are correct, and that non-resident married women, though their marriage took place in this State, had not, independently of the statute, the right to bring an action for separation of property in this State, or to avail of similar relief extended by our laws in the protection of our own married women.

It is, therefore, adjudged and decreed that the judgment appealed from be amended by rejecting the demand of Mrs. C. Schlenker and dismissing her intervention, and by maintaining the attachment of the plaintiffs and recognizing their privilege on the property attached for the amount of the judgment in their favor, and that as thus amended, the same be now affirmed, appellees to pay costs of appeal.