THE FIREMENS' INSURANCE COMPANY OF NEW ORLEANS *v.* JULIA LOUISA CROSS.

Art. 2256 of the Civil Code, which forbids the introduction of evidence against, or beyond what is contained in public acts, does not apply to contracts made *in fraudem legis.* A party may show by parol the real nature of such contracts.

A wife, who has mortgaged her paraphernal property to secure the payment of a loan, which was received by her husband, and did not enure to her benefit, though appearing alone in the contract, as having borrowed the amount with the authorization of her husband, may show by parol the real character of the transaction, and exonerate herself.

Under no circumstances can a wife become surety for her husband. The form of the contract will be disregarded. Those who treat with married women, must see that the obligations they contract turn to their advantage.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Lockett* and *Micou*, for the appellants.

*W. Christy*, for the defendant.

MORPHY, J. This action is instituted on a promissory note for $7000, drawn by the defendant, authorized by her husband, to the order of, and endorsed by, Frederick Beckman, and secured by mortgage on three lots of ground, her paraphernal property. The defence is, that the note sued on, which bears date on the 26th of October, 1839, is a renewal of a similar one given to the petitioners in October, 1838, which was also secured by mortgage on the same property; that although in both acts it is stated, that the defendant was indebted to the plaintiffs for money loaned to her, the consideration for which these notes and mortgages were in truth given, was a loan made to her husband, Osborn Cross; that she never received any part of the money; that the debt did not, in any way, enure to her benefit or advantage; and that these facts were fully known to the petitioners. There was a judgment below for the defendant, and the plaintiffs appealed.

In the two acts of mortgage, the defendant appears alone as a borrower, with the authorization of her husband, and mortgages her paraphernal property to secure the notes, which purport to be given for cash loaned to her; and in the same acts, Osborn Cross and Frederick Beckman separately obligate and bind themselves, *in solido*, to the plaintiffs, for the payment of the said notes.

On the trial, the court overruled the objection of the plaintiffs, and permitted the defendant to show by testimony, that the loan was in fact made to Osborn Cross, the defendant's husband, and not to her, as expressed in the act of mortgage. The legality of this decision is submitted to us on a bill of exceptions. The Judge decided correctly. The article of the Code relied on,

which forbids the introduction of evidence against, or beyond what is contained in public acts, does not apply to contracts made *in fraudem legis.* If such an exception did not exist, and if it were not open to the defendant to show the real nature of the transaction, the laws made for the protection of married women would have no effect whatever. In every case their provisions could be evaded, by giving to a.prohibited contract the garb and semblance of one perfectly legal, and thus would be done indirectly, what could not be done directly. 8 Mart. N. S. 692. 7 Ib. N. S. 341.

The evidence establishes in substance, that Osborn Cross had no other means of living than his pay as an officer in the army, which was about sufficient to defray his expenses; that in the fall of 1838 he had debts, was pressed for money, and was attempting to borrow some. That a few days after this loan was made, he paid off debts to the amount of $3000; that no portion of the money loaned was ever paid to the defendant, but that it was paid by the plaintiffs to different persons on orders, given by her husband; and no attempt was made to show that any portion of this loan enured, in any way or shape, to her benefit and advantage. We are satisfied that the money borrowed was intended for, and was applied to the use of the defendant's husband. The circumstance of the wife appearing alone in the contract, as having borrowed the money with the authorization of her husband, cannot distinguish this case from those in which we have so frequently exonerated married women, from contracts entered into jointly and severally with their husbands, when it is not shown that the debt has enured to their benefit. Were it otherwise, the husband and the obligee, in loans made to the former, would invariably give this form to the contract, and thus commit a fraud upon the wife. This case is much stronger than that of *Brandegee* v. *Kerr and wife*, (7 Mart. N. S. 64,) in which it appeared that the wife had actually received the money, but there was no proof of its having turned to her separate advantage. Under no circumstances can a wife become surety for her husband, according to our laws; and the form of the contract will be disregarded, if, in point of fact, she turns out to be a mere surety, when she was made to appear in the light of a principal. . It is for those

who treat with married women to be upon their guard, and see that the obligation she contracts turns to her benefit and advantage. 7 Mart. 484. 2 Ib. N. S. 395. 5 Ib. N. S. 431. 7 Ib. N. S. 252. 8 Ib. N. S. 692. 9 La. 587. 10 La. 147.

*Judgment affirmed.**

*.*Lockett* and *Micou*, for a re-hearing. 1. All the decisions, by which, the party claiming to enforce the contract of a married woman, is held to proof that the contract enured to her benefit, are based upon the Spanish laws.

2. Those laws having been repealed in 1828, the obligations resulting from contracts of married women, must be tested by the provisions of the Civil Code alone.

3. Under the code the contract of the wife, authorized by the husband, is valid, unless it conflicts with some express prohibition of the law.

4. The burthen of proof that such conflict exists, now rests upon the wife.

*First.* The leading case on the subject is that of *Durnford* v. *Gross and wife,* 7 Martin, 489. The decision turned upon the question, *whether* the 61st law of Toro was not repealed by the code. By that law, the contract was not binding unless *it was proved* to have enured to the benefit of the wife. Such proof was a part of the plaintiff's case. The court held that the several articles of the code, allowing married women to contract, should be construed with reference to this co-existing law, and judgment was rendered accordingly. But the arguments, both of the counsel and the court, lead to the conclusion, that if the 61st law of Toro had not been in force, the decision would have been otherwise.

The case of *Brandegee* v. *Kerr* decided in 1828 was upon a contract governed by the same law, and rests upon the authority of the case already quoted. 7 Mart. N. S. 64.

The case of *Davidson* v. *Stuart*, 10 La. 147, was decided obviously upon the authority of the preceding cases, and without inquiry as to any change in the law. Now, the provisions of the present code being substantially the same with the enactments of the code of 1808, and the law of Toro having been repealed, it follows :

*Second.* That the case must be decided by the provisions of the code alone.

*Third.* The code provides : that the wife cannot grant, alienate or *mortgage unless with the consent of her husband.* Art. 124.

That the *incapacity* of the wife to contract, is *removed* by the authorization of the husband. Art. 1779.

That the wife may alienate her paraphernal property, with the authorization of her husband. Art. 2367.

That she cannot, except with the authorization of her husband, alienate her immoveables. Art. 2411.

These articles, with others providing for special cases, establish the principle, that the wife, with the consent of the husband, may make any contract, which she could make if unmarried. The distinction taken by the Judge below, that she may alienate, but not mortgage, is not supported by the law. The provision that she cannot mortgage, (art. 124,) without the consent of the husband,—being equivalent to a permission to mortgage with his consent, even if the word alienate did not include that of mortgage, which is a species of alienation.

The only exception to the principle thus established is, that the wife cannot bind herself with her husband, or for him, for debts contracted *by him*, before or during the marriage. Art. 2412.

Then the law is not, that to bind the wife upon her contract, proof must be made that it enured to her benefit; but that the wife may bind herself by her contracts, authorized by her husband; except in case of binding herself for his debt.

*Fourth.* In this state of the law, it would seem on fair principles that the wife, who has contracted an obligation in the form prescribed and permitted by the code, is bound by her contract, unless *she proves* that the case comes within the exception.

*Fifth.* The contract in this case, is a mortgage in due form of law, upon paraphernal property of the defendant. Then it is a contract permitted by the law. Arts. 124, 2367.

The defence is, that the amount of the loan was received by the husband, and applied to his own use.

The wife has the right to administer her paraphernal property. If she does not choose to exercise this right, it devolves upon the husband, or it may be exercised by both. Arts. 2361, 2362, 2363.

The record shows, that there was no separation of property between the defendants, until after the institution of this suit; and, that the husband did administer the paraphernal property.

From the moment of signing the acts of mortgage, the right to receive the amount of the loan, became a personal right to be exercised even in justice, by the husband. Code of Practice, art. 107.

Of course he had, as administrator, the right to receive the loan, and payment to him was, in law, payment to the wife.

The condition of the lender would be indeed onerous, if he were forced to become the surety of the person to whom he is compelled to pay.

If the money in question had been a debt due the wife as paraphernal, the payment to the husband would have been a good payment, and it could not be maintained that the debtor must look to its application after payment. He is not the guardian of the wife, and any attempt to control the husband in his administration of the wife's property, would be unwarranted and *impertinent.*

The law declares, that if dotal property be sold, the proceeds or value must be re-invested in other dotal property. Yet this court, within a few weeks, has decided that it is not the business of the purchaser, to see to the re-invest-

ment of the price paid by him. That duty the law leaves to the husband, and the mortgage upon his real, and privilege upon his personal estate, are the security which the law has given to the wife, to secure the faithful performance of his trust. *Montfort* v. *Her Husband,* ante, p. 453.

Still stronger is the law in case of the sale of paraphernal property. The law does not require the re-investment of the proceeds. It provides for the case of the receipt of the money by the husband, and the conversion of it to his own use ; and the security given to the wife is not, that she may rescind the contract and recover the property, *but that she shall have a mortgage for its return.* Civil Code, art. 2367.

The maxim *expressio unius, &c.,* again applies with great force. If the law intended to give the right to rescind ; it would have so enacted ; while, as the law stands, the granting of a mortgage upon the husband's property, excludes the idea that the right to rescind exists, because it is inconsistent with the other. The wife cannot claim both the price and the property ; and where the law says how the price shall be secured to her, it in substance enacts that she has no further claim upon the property. It does not put her upon an election between inconsistent rights.

We have already seen that the law makes no distinction between mortgages and alienation ; the latter word is used in art. 2367 ; but the greater includes the less power, and the same rule must apply whether money is raised by mortgage, or by a sale of the paraphernal property.

Under the laws existing at the time of the decision of *Durnford* v. *Gross,* as construed by the court, the wife might mortgage her estate with the authorization of her husband, provided the mortgagee should be always ready to prove that the mortgage was for her benefit. Law 61st of Toro.

Now, the enactment of the code remaining the same, and the proviso, having been repealed, it follows simply that the wife may make a valid mortgage, if authorized by the husband. If the decision of the court, in this case, be affirmed, the repealed proviso will be revived by judicial decision, and added to the code.

As the law then stood, the party making a loan, was put upon his vigilance to see how the money was applied. The application of the money became a part of his case ; and, in making the loan, he had reason to insist upon a superintendence of its distribution. But, if the law has been changed, it is no longer the duty, or the right of the lender, to require from the borrower a disclosure of the purpose to which the money is to be appropriated.

We conclude, that the defendant is bound by this contract, unless she has proved that it came within the prohibition of the law.

The only restriction upon the rights of the wife, (authorized, &c.) to contract and bind herself by her contracts, is, that she shall not bind herself with her husband, or for him, " for debts contracted *by him,* before or during the marriage."

If the wife, in her own. name, obtains a loan to be secured by mortgage upon her own property, the debt cannot, in any sense, be said to have been

contracted by the husband. It is simply the contract of the wife, and not the less valid, if the husband binds himself for the same debt, for the law does not prohibit the husband from being the surety of the wife.

The payment of the money to the husband does not affect the validity of the transaction, or prove collusion because he is the agent of the wife.

If, on the other hand, the plaintiff knew that the money was intended for the husband alone, and, with that knowledge, accepted the mortgage of the wife, the transaction would be a fraud within the prohibition of the law, and therefore void. Knowledge or collusion must be brought home to the plaintiffs before the contract can be touched. But the defendant has neither alleged, nor attempted to prove, that such knowledge or collusion existed. She rests her case upon the proof that the husband received the money, and upon the presumption that he used it for his own purposes, because, it is not shown to have enured to her benefit.

We therefore contend, that the incapacity of the defendant being removed, her contract must be governed by the same rules as the contracts of other persons ; that the payment to the husband, or to his order, was well made ; and that the plaintiffs are not responsible for the misappropriation of the money. We further contend, that the misappropriation of the money, if proved, gives no right to annul the contract, but only creates a mortgage upon the estate of the husband.

No imputation of fraud or collusion can rest upon the plaintiffs. They have advanced, upon the faith of the defendant's promise and mortgage, the large sum of $7000 of their own money ; and a defence by which either the husband or the wife is to be protected in the enjoyment of this money, without the obligation of returning it, is one not to be favored by the law. It is true that the law protects the rights of married women ; but it ought not to be used by them, to obtain possession of the money of others, and then to repudiate the promise to repay it.

*Re-hearing refused.*