Darling vs. Lehman, Abraham & Co.

---

No. 8662.

### FANNIE A. DARLING VS. LEHMAN, ABRAHAM & CO.

A married woman has the right to borrow money and to secure its return by mortgage on her property, with the authority of her husband, given concurrently with that of the District Judge of her domicil, or without it.

Where judicial sanction is obtained, the creditor is relieved from the necessity of proving the loan, and that it enured to her benefit: the burden is upon her, under proper charges, to prove that she is not liable. Where the sanction is not procured, the creditor is required to make the proof.

The authority of the Judge is cumulative, not restrictive or exclusive in character.

The power to compromise and to sell property implies, that of giving it in payment of a just debt of the principal. What the agent could have done indirectly, he can accomplish directly.

APPEAL from the Civil District Court for the Parish of Orleans. Lazarus, J.

---

W. S. Benedict and A. Voorhies for Plaintiff and Appellee.

*E. D. White* and *Braughn, Buck & Dinkelspiel* for Defendants and Appellants:

1. The plaintiff gave her full and express power of attorney to her father, investing him not only with power to administer, but to mortgage and sell her property.
2. The father borrowed $6,000, and secured it by mortgage on a plantation in which plaintiff was interested, as heir of her mother, jointly with her co-heirs.
3. The proof shows that the money was used for working the plantation.
4. A married woman does not need the authority of a judge to mortgage her separate property. She may do so with the authority of her husband. The Act of 1855, now C. C. 127, was intended to enlarge, not restrict, the power of married women. Rice Bros. vs. Alexander, 15 An. 54; Harden vs. Wolf & Cerf, 29 An. 333.
5. Having the power to act with the authority of her husband, no law restricts the exercise of the power through an agent duly appointed. Nugent vs. Starke, 30 An. 492; Calhoun vs. Mechanics' & Traders' Bank, 30 An. 774.
6. The debt enured to the separate advantage of the wife. The advances were made the agent to work her property. The mere fact that the agent bought supplies from the husband, and paid him for the advances, was not paying the husband's debts with the wife's money. It was simply paying a debt due him.
7. The fact, that instead of paying the husband for the supplies bought in money, the agent paid him in a draft on the merchant who was making the advances, and that the husband used this draft for paying his debts, does not constitute a payment of the husband's debts with the wife's property or money. The draft having been given the husband for the price of supplies by him sold, became the husband's property. He paid his debts with his own. He had acquired the draft for value; it was his, not his wife's.
8. Be this as it may, the draft was that of a partnership; not the wife's. The wife was a member of the partnership; the other members being her co-heirs. The partnership was distinct from its members. Paradise vs. Gerson, 32 An. 532.
9. The claim preferred by the wife, in this cause, for revenues during the very time the plantation was worked, with the advances made to her agent, which she now seeks to repudiate, is an admission which destroys her present claim. One cannot claim the revenues and repudiate that without which revenues could not exist. *Functus non intelliguntur nisi deductus impensis.*

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action by a married woman to annul a *dation en paiement* made by her agent of her fifth interest in a certain plantation, and to recover her share of the revenues of the property from the time she parted with possession.

The defence is, that the agent had authority to contract debts in her name, to secure them by mortgage on her real estate, to dispose of her property and that, having done so validly, his acts are binding on her.

From a judgment adverse to them, the defendants have appealed.

The power of attorney from plaintiff to her father, who acted throughout as her agent, was executed with marital authorization in the notarial form. It covers some six pages and apparently was designed to

provide for all imaginable contingencies. It specially delegates the power to administer, mortgage, compromise and sell.

The contention by the plaintiff seems to be predicated on the theory, that, as she was not authorized by the District Judge of her domicil to borrow money and to mortgage her property, to secure reimbursements, and, as her agent had no greater powers than she herself possessed, those who dealt with him did so at their risk and peril and can recover under no circumstance.

This is a fallacy. The theory was long since exploded.

A married woman has the right to borrow money and to secure its return by mortgage on her property, but the exercise of that right is subordinate, as a rule, to the authority of her husband, granted either concurrently with that of the District Judge, or without it. The authority given by the Act of 1855, now Article 127, R. C. C., is cumulative, not restrictive or exclusive in character.

In the first instance, the loan having been effected and the mortgage consented under judicial sanction, and steps being taken to enforce payment of the debt, with the security attached, the creditor is relieved from the necessity of seeing and of showing that the loan enured to the benefit of the married woman. The burden rests upon her, under proper charges of non-liability, implicating the creditor, to show that she is not indebted.

In the second instance, in which judicial authority was not obtained, it is incumbent on the creditor seeking payment to make the proof. 15 An. 54; 22 An. 457; 26 An. 402, 714; 29 An. 337; 30 An. 492; 28 An. 232, 494; 29 An. 123; 31 An. 734, 832; 30 An. 774, 812, 940, 1157; 32 An. 203, 1103.

In the case at bar, as the plaintiff was not authorized by the Judge, and as the power of the agent to borrow in her name is not disputed, she must recover, unless the loan was not contracted, or, if contracted, it did not enure to her benefit.

Hence, the questions to be examined are:

Has the agent borrowed for his principal, and, if so, how much?

Has the amount enured to the benefit of the plaintiff?

Was the debt contracted alive at the time of the settlement?

Had the agent the right or power to ratify it, by giving in payment the property of his principal?

The evidence, which it is useless to discuss, establishes satisfactorily that the defendants have advanced, at different times and in different ways, to the agent of plaintiff, sums of money and supplies which were employed to work the plantation owned by plaintiff and her four co-

heirs, and that the advances thus made and used, in the aggregate footed $8,796, for which the five owners were liable, subsequently swelling to $9,000.

Among the items figuring in the statements of advances are to be found drafts drawn by plaintiff's agent, in favor of her husband, who was engaged in the grocery business in this City on defendants, who settled them, but it is proved that they were thus furnished for supplies and provisions purchased from him by the plantation manager and which were used for plantation purposes. Whether those drafts were paid in money by the defendants, or placed to the credit of the husband, in part payment of an indebtedness of his to them, is immaterial, as it leads to the same result.

The record discloses a telling contemporaneous circumstance, going strongly to corroborate the fact of the indebtedness, that of a proper use and application of the advances of money and supplies, and that of a fairness and propriety in the *dation en paiement*. It is this : that the other co-proprietors were parties to the acts of mortgage and transfer of the property, and are not heard to charge error or fraud, or any reason destructive of the several transactions had in the matter, or in any manner to complain of injustice, or even injury. There is not even a whisper on that subject, calculated to cast the least reflection on the dealings of the parties; none surely to assail the good faith and character of the defendants.

The power to compromise and to sell the property implies that of giving it in payment of a just debt. The agent unquestionably could have sold the property to the defendants, receiving the price with one hand and paying it out with the other, in extinction of the debt. It would have been an idle ceremony to have done so. In such a case, that which the agent could validly have done indirectly, could be legally accomplished directly.

There is no evidence that the property has netted any revenues, susceptible of division among the co-proprietors.

The defence is well founded, and plaintiff must succumb in her action.

It is, therefore, ordered and decreed that the judgment appealed from be reversed, and that judgment be and is now rendered in favor of defendants in both Courts.

Rehearing refused.