### No. 12,909.

J. B. WEST (CHAFFE, POWELL & WEST SUBSTITUTED) VS. MRS. O. M. DEMOSS AND HUSBAND.

IN RE O. M. DE MOSS APPLYING FOR CERTIORARI TO THE COURT OF APPEALS, SECOND CIRCUIT OF THE STATE OF LOUISIANA.

1. Grounds restated upon which this court will grant its writ to review decisions of the Courts of Appeal. Art. 101 of the Constitution does not invest this court with appellate jurisdiction over the Courts of Appeal, or grant to litigants a further and additional right of appeal. The writ of review will issue only in exceptional cases, mainly to secure uniformity of jurisprudence.

2. The material or substantial variation, to the disadvantage of the wife, from the terms of the authorization of the judge pursuant to C. C. 128, does not annul the mortgage which followed, but does destroy the efficacy of the certificate of authorization, and the creditor must prove *aliunde* that the debt enured to her separate benefit.

3. Cotton purchased by husband, though the wife's name was used and she was induced to sign drafts given for the purchase price, and though the cotton was shipped in her name, held to be no part of her separate planting business, and the loss resulting can not be fastened upon her.

*A. L. Slack* and *Stone & Holmes* for Petitioners.

———

*W. M. Murphy* for Respondents.

———

Submitted on briefs September 22, 1898.
Opinion handed down November 21, 1898.
Rehearing refused December 19, 1898.

———

The opinion of the court was delivered by

BLANCHARD, J.  This action originated in the District Court, Parish of Madison.

A decision there adverse to plaintiff was followed by appeal to the Court of Appeals, Second Circuit, where the judgment was reversed and a decree handed down in favor of the plaintiff for the amount claimed, with recognition of mortgage, etc.

Thereupon defendants applied to this court for its writ under the provisions of Art. 101 of the State Constitution, to bring the case here for review and determination.

As this practice is yet new under the present judicial system, the court takes occasion to restate its construction of the latter part of Art. 101, as laid down in its ruling denying the writ *In re* A. J. Ingersoll applying for writ of error to the Court of Appeals, First Circuit, in case of J. O. Toole vs. C. H. Minge & Co.  It was there said:

"It is clearly the intention of this part of the article of the Constitution referred to that it should be entirely *discretionary* with this court, on the case as presented, to grant or withhold the writ.  This is demonstrated by the fact that no particular kind or class of cases is specified as to which the application may be made.  It was not intended by a resort to the power here granted to make of the Supreme Court a sort of superior court of appeals over the Circuit Courts, to take jurisdiction of, and hear and determine any and all cases that may have been decided by the latter courts in the exercise of their legitimate, constitutional jurisdiction.  In other words, it was not intended that the Circuit Courts of Appeal should be made merely a stopping place for causes between one hundred dollars and two thousand dollars, on their way from the District Courts to the Supreme Court.  It was, rather, intended

that the power thus lodged in the Supreme Court should be exercised only in special or extreme cases, whose peculiar circumstances as to the facts or the law governing the same, justify, in the opinion of this court, a resort to it. For example, where the Court of Appeals refuses to be guided, in a clear case, by the well-established jurisprudence as defined and laid down by this court, a case would be presented warranting this court in sending down its writ to bring up such case for review and determination. This might be necessary to enforce uniformity of jurisprudence throughout the State in the courts thereof. Other cases for other reasons may arise justifying a resort to the writ—care being always taken against its abuse, to the impairment of the dignity and power and usefulness of the courts of appeal, and protracting litigation and deferring the final enforcement of just rights."

This was followed by similar views expressed *In re* L. D. McLain applying for *certiorari* to the Court of Appeals in the case of McLain vs. Burgess, and *In re* A. J. Murff applying for the writ in Bell vs. Murff—in each of which cases the application was denied on the ground that the writ of *certiorari* or review was not given to clothe this court with appellate jurisdiction, or to effectuate a further and additional right of appeal, but to issue only in exceptional cases, mainly to secure uniformity of jurisprudence.

These views are reasserted and adhered to as the proper construction of the Article of the Constitution.

The case at bar was considered as "exceptional," at least that a *prima facie* case for the writ had been made out, and, accordingly, it was granted, the court assigning, among other reasons, the following:

"If we correctly appreciate the opinion (of the Court of Appeals) it holds the wife liable on the basis, in part at least, of certain legal propositions which do not command ready acceptance. One is that the husband, acting as the wife's agent in the cultivation of her plantation, can bind her for money procured by him for the purchase of cotton in speculations resulting in loss, with which * * * she is charged. Another is, that under Article 2435 of the Code and the decisions, of which 6th Annual, 199, is the type, the husband being insolvent, the wife separate in property, she is bound for debts made by the husband of the character of plaintiff's advances. These propositions, if we correctly appreciate them, seem to be incon-

sistent with the absolute incapacity of the wife, separate in property or not, to bind herself or to be made liable for the husband's debts— *i. e.*, those our law makes debts of the community.''

———

Proceeding to the consideration of the merits of the controversy presented, we find the salient facts to be, that defendant, judicially separate in property from her husband, cultivated a plantation (her separate property) on her own account and in her own name. This plantation was the domicile of herself and husband and the latter acted as agent of the wife in conducting the plantation business. The husband was without means or property of his own.

The wife appeared before the District Judge stating her wish to borrow money and contract indebtedness for the use and benefit of her separate estate, and being examined by him pursuant to C. C. 127, 128, and her replies satisfying him that it was an indebtedness the law permitted her to contract, issued to her a certificate of authorization to borrow not exceeding sixteen hundred dollars and secure same by a mortgage on her separate property.

Meanwhile she had effected arrangements with the commercial firm of Chaffe, Powell & West to become her commission merchants and make advances of money and supplies to enable her to cultivate her plantation. The money she had been authorized by the judge to borrow was to be had from them, and the mortgage to secure it was to be executed in their favor.

Armed with this authorization she and her husband appeared before a notary and, declaring an indebtedness to Chaffe, Powell & West, executed two notes in their favor, one for four hundred and ninety-five dollars, the other for eleven hundred and five dollars, aggregating sixteen hundred dollars, and secured same by a special mortgage on her plantation.

The husband signed these notes and mortgage with the wife.

The mortgage recited that the indebtedness represented moneys and supplies advanced and to be advanced her during the current year to enable her to cultivate a crop on her plantation.

In point of fact it represented only moneys and supplies *to be advanced*, for the evidence shows she owed them nothing at the time.

The act of mortgage, further, recognized, in favor of Chaffe, Poweil & West, the privilege accorded by law to the fnrnishers of supplies.

It was stipulated therein that " they do each (meaning husband and wife) agree and obligate themselves to ship to Chaffe, Powell & West for sale at their discretion * * * all the cotton either of them raise, or control, of the crop of 1891, and if they fail to so ship to said parties by the first day of February 1892 as much as one hundred and fifty bales of cotton, and an additional bale for each ten dollars advanced to her in excess of the aforesaid fixed accommodation * * * they jointly and severally agree to pay them one dollar and twenty-five cents per bale commission for such deficiency of shipment."

The open account was to bear eight per cent. interest and the commission merchants were stipulated to have " the exclusive control of and right to apply proceeds of all cotton shipped, and all payments of money or other things made to them, to the payment of any secured or unsecured indebtedness on open account or otherwise now due or that may hereafter become due them, as they may prefer, and they may, at their discretion, change such application of credits at any time before payment of all joint and several indebtedness to them."

The judge had not authorized the wife beyond borrowing the money and executing the mortgage.

This, of course, impliedly included the usual and necessary adjuncts of negotiable or other instruments to represent the indebtedness, with stipulation as to interest, and attorney's fees and costs in case of suit, etc.; and it was not obnoxious to the certificate of authorization that the recital as to recognition of the privilege of furnishers of supplies was made.

Some of the other stipulations may be passed over as immaterial, but the one quoted above, relating to imputation of payments and change af credits, must be held such a material and substantial variance from the authority given by the judge as to take this case out of the protection of C. C. 128—that is to say, when a wife is properly authorized and there has been *observance* of the authorization, she is treated *quoad* that transaction as *femme sole*—and threw upon the creditor the burden of proving that the indebtedness asserted enured to the wife's separate benefit.

The Conrad case, 29 La. An. 123.

The Berwick-Frere case, 49 La. An. 202.

The material or substantial variation, to the disadvantage of the wife, from what the judge authorized, does not annul the mortgage or other contract, as counsel for defendant insists, but does destroy the efficacy of the certificate of authorization, and the creditor must prove *aliunde* that the debt secured by the mortgage enured to her separate benefit.

The Berwick-Frere case *supra* is not to be construed as going further than this.

The law as it stood in regard to the contracts of married women previous to the act of 1855 (now C. C. 126, 127, 128) remains unimpaired, with the difference that a married woman taking the benefit of that act is placed on the same footing with a *femme sole,* her contract furnishing full proof against her, while under the general jurisprudence those who deal with a married woman are bound to see that the contract made with her enures to her benefit.   Rice vs. Alexander, 15 La. An. 54.

It has never been disputed that a married woman, authorized alone by her husband, can validly contract in reference to her separate estate.   Hence, it follows that when she seeks and obtains the further authorization of the judge, pursuant to the articles of the Code referred to, and in a mortgage following this authorization the terms of the latter are departed from, and stipulations are embodied in the mortgage constituting material and substantial variations from the authorization, the only result will be to do away with the effect of the authorization, leaving the creditor in the position of having dealt with a married woman authorized alone by her husband, and to stand or fall according as he may prove, or not prove, *aliunde* that the indebtedness he seeks to hold her for enured to her separate benefit.

And in an action on such a contract, where the wife stands unauthorized by the judge, but authorized by her husband, the plaintiff must show affirmatively before he can recover that the debt did enure to the separate advantage of the wife, and this is true whether she be separate in property or not.

Urquhart vs. Thomas, 24 La. Ann. 95;

Erwin vs. McCalop, 5th La. Ann. 173;

Hardin vs. Wolf, 29 La. Ann. 333;

Pascal vs. Folse, 48 La. Ann. 1230.

Holding that this creditor stands on a contract where the wife must be considered as authorized by the husband alone, the next inquiry is did the consideration of the mortgage notes enure to her advantage, or that of her separate estate.

We find that on receiving the notes Chaffe, Powell & West placed the proceeds thereof, less discount at eight per cent. and commissions at two and a half per cent., to the credit of defendant. The notes were dated February 6, 1891, and the smaller one matured December 15, 1891, the larger one January 15, 1892. They drew, each of them, eight per cent. interest from December 15, 1891.

The amount so placed to the credit of the defendant was one thousand four hundred and forty-seven dollars and eighty-seven cents.

Thereafter the notes became the property of Chaffe, Powell & West, who had discounted the same. The defendant in her planting operations absorbed the proceeds of the notes and undoubtedly the indebtedness represented by the same enured to her benefit. So the notes became an enforceable asset in the holders' hands against her and against the property she had mortgaged to secure them.

But defendant did not stop drawing on plaintiffs for money and supplies, in her planting business for that year, when the proceeds of the notes became exhausted. She continued her drafts and orders and in due time shipped the crop of cotton (eighty-six bales) raised on her plantation to Chaffe, Powell & West.

The same rule must apply to the indebtedness contracted by defendant, authorized by her husband, with her merchants after exhausting the proceeds of the notes, as was applied to the notes themselves. They can hold her only for such advances and supplies as were made to her for her separate plantation business and used legitimately therefor, thus enuring to her benefit, and for such other items of indebtedness which, not being ordered for her separate planting business, enured otherwise to her benefit, or that of her separate estate, or were such expenses as the law declares a wife must support.

We have already seen the husband was without means or property and, as a consequence, it devolved upon the wife to support the family expense.

Without going into a discussion of the voluminous evidence found in the record, suffice it to say that we are satisfied plaintiffs have made out their case, except in the particular hereinafter set forth.

The money, supplies, etc., obtained from her merchants were used by defendant in her separate business, for cultivating her crops, for maintaining her plantation, for paying her debts, for supporting her household expenses, etc., except as we shall show later, and thus, to this extent, she must be held liable therefor as for indebtedness that enured to her separate benefit. Chaffe & Sons, vs. Watts, 37 La. Ann. 326; McElvin vs. Taylor, 30 La. Ann. 552.

The eighty-six bales of cotton shipped from defendant's plantation were sold and the proceeds thereof applied to her credit. In the course of these transactions the smaller note held by plaintiffs was charged into the account, paid and satisfied and the same delivered to the maker, and the account showed a balance in favor of defendant which must be applied as a credit on the larger note.

What this true balance is, is the real point at issue, in our view of the case.

On April 2, 1894, the last statement of account was rendered by plaintiffs. It showed credits to defendant which reduced the amount due on the larger of the two mortgage notes to eight hundred and fifty-seven dollars and seventy-seven cents.

This is the amount plaintiffs claim, with eight per cent. interest from said date, and the amount for which they were awarded judgment by the court of appeals.

We do not think defendant can be held for that sum.

Certain cotton, aggregating sixty-six bales, was purchased by D. D. DeMoss, husband of defendant, and shipped plaintiffs. The basis of this purchase of cotton by DeMoss, as a venture of his own, was, we think, laid in the act of mortgage itself, as shown by an extract from same hereinbefore made.

The cotton was purchased from neighboring farms. That the wife's name was used, that the husband induced her to sign drafts given for the purchase price, that it was shipped in her name, do not, we think, make the purchases any the less those of the husband.

It was outside of the wife's separate planting business. It was a speculation by the husband, and beyond doubt plaintiffs had knowledge that small lots of cotton were from time to time being bought by DeMoss, husband, and shipped to them in the wife's name and paid for by drafts which the wife had been called on to sign. Having no credit of his own, the husband was using hers, and the evidence shows she protested to him against it.

It will not do to say the wife was making these purchases of cotton in order to fill the complement of one hundred and fifty bales she had engaged to ship plaintiffs.

An examination of the stipulation of the mortgage in this respect shows that the husband, for himself, on his own account, assumed an obligation to plaintiffs that as much as one hundred and fifty bales would be shipped them. The wife did likewise, it is true, but·so it was done by one, or the other, or by both, the obligation would be fulfilled.

The wife supplied the larger portion of the requisite number of bales from her plantation; the husband *purchased* the remainder from near-by places.

The money supplied by plaintiffs, by payment of drafts and otherwise, to purchase this cotton can not be held an advance to defendant's plantation or separate business. It was money supplied to enable the husband to embark in a mere venture; it was a damage and not a benefit to the wife; it resulted in a loss of some hundreds of dollars; and, thus, there is lacking entirely the element to make it an indebtedness binding on her—*it did not enure to her benefit.*

This cotton when sold by plaintiffs was entered up to the credit of defendant, just as the money used in its purchase had been entered up to her debit.

But the cotton sold for less than the sum it cost and, hence, a loss. This loss, it is sought to make the wife bear.

It falls on the husband, not on her. It must be held as resulting from his separate and independent transactions with plaintiffs. This cotton should be charged off on her account at the same sum that it had been entered on the account as an indebtedness against her. This can be equally effectuated, however, by ascertaining the loss on it, and crediting the amount thereof on the note declared on.

Defendant's counsel figures the loss at about six hundred dollars; plaintiffs' counsel at two hundred and twenty-three dollars and six cents.

The Court of Appeals fixed it at four hundred and thirteen dollars and ninety-four cents. We will adopt its calculation and estimate as showing the true loss, and give defendant credit therefor on the note sued on as of date April 2, 1894, the time when the last credit was given her for cotton sold, and the last statement was rendered her.

Board of Medisal Examiners vs. Fowler.

For the reasons assigned it is ordered, adjudged and decreed that the judgment rendered by the District Court, and that rendered by the Court of Appeals, Second Circuit, in this cause, be set aside and annulled, and proceeding to render such judgment as should have been rendered in the first instance, it is now ordered and decreed that Mrs. Eliza Cha ffe, Executrix of the Succession of Charles Chaffe, deceased, A. C. Leigh, administrator and executor of John Powell, deceased, and J. B. West, plaintiffs herein, do have and recover of Mrs. O. M. DeMoss, defendant herein, the sum of four hundred and forty-three and 83-100 dollars, with 8 per cent. interest *per annum* thereon from April 2, 1894, until paid, together with 5 per cent thereon as attorney's fees.

It is further ordered and decreed that the special mortgage consented to by defendant on the 6th of February, 1891, before Scott Bettis, clerk of the Eighth District Court, in and for the Parish of Madison, Louisiana, and resting on the property described in plaintiffs' original petition, be recognized and enforced, and that said property be seized and sold to pay and satisfy this judgment.

It is further ordered and decreed that defendant's demand in reconvention be rejected; and that costs of the District Court and of the Court of Appeals be borne by defendant, and those of this court by the plaintiffs.