(78 South. 134)

No. 22690.

NATIONAL CITY BANK OF CHICAGO v. BARRINGER et al.

In re NATIONAL CITY BANK OF CHICAGO.

(Jan. 28, 1918. Rehearing Denied March 9, 1918.)

*(Syllabus by the Court.)*

1. HUSBAND AND WIFE &—155 — LOAN TO MARRIED WOMAN—RECOVERY—PROOF.

One who lends money to a married woman, domiciled in Louisiana, upon the authorization

of her husband, without that of the judge of her domicile, can recover it by suit only upon making affirmative proof that it inured to her separate benefit and was not borrowed for her husband or for the payment of his debts, or for the community.

2. HUSBAND AND WIFE ⬿146½—WIFE'S CAPACITY TO CONTRACT—WHAT LAW GOVERNS.

The capacity of a married woman, domiciled in Louisiana, to bind herself, or her property, by contract is determined by the law of her domicile.

O'Niell, J., dissenting.

Suit by the National City Bank of Chicago against Mrs. Georgia S. Barringer and husband. From a judgment of the Court of Appeal reversing a judgment of the district court in favor of the plaintiff, plaintiff applies for certiorari or writ of review. Application dismissed.

Hudson, Potts, Bernstein & Sholars, of Monroe, for plaintiff. Stubbs, Theus, Grisham & Thompson, of Monroe, for respondent Mrs. Georgia S. Barringer.

### Statement of the Case.

MONROE, C. J. Plaintiff brought this suit against a married woman and her husband, domiciled in Louisiana, upon a note executed by her, in Louisiana, with her husband's authorization, but made payable in Chicago, given as the last of a series of renewals of similar notes, made and payable in Louisiana, the proceeds of which were used by the husband for his own purposes. There was judgment in the district court in favor of plaintiff, and, on the appeal to the Court of Appeal for the Second circuit, that judgment was at first affirmed, but on rehearing was reversed, and it is the judgment of reversal that we are now called on to review.

The facts of the case are as follows:

On June 23, 1911, Victor Barringer, the husband of the defendant, whose name appears in the caption, living with his wife in the parish of Ouachita, obtained from the Ouachita National Bank of Monroe, in that parish, the discount of a note for $2,000, executed by his wife, with his authorization, and secured by an act of pledge, similarly executed and authorized, of 20 shares of stock, the property of his wife. The note was renewed from time to time until 1913, when, through negotiations conducted by Mr. Barringer and the Union National Bank of Monroe, the National City Bank of Chicago agreed to take the place of the first lender, and a new note and act of pledge having been executed by Mrs. Barringer, at her home in Monroe, with the authorization of her husband, and delivered to plaintiff, it made its draft in her favor for $2,000, less discount, which was forwarded to the Union National Bank, by which it was delivered to her husband, who obtained her indorsement thereon and turned it over to the Ouachita National Bank, in part payment of the amount due to it on the original loan. The evidence is uncontradicted and conclusive to the effect that Mrs. Barringer had no personal dealings with either of the banks with reference to the transactions in question, and made no representations to any one in regard to them; she merely signed, at the request of her husband, the different papers which he presented to her for signature, and none of the proceeds ever reached her, or inured to her benefit. The note to plaintiff was renewed at maturity, and, upon the nonpayment at maturity of the note given in renewal, plaintiff sold the pledged stock, and, after crediting the note with the proceeds, less various charges, brought this suit, alleging that Mr. Barringer had guaranteed its payment, and praying judgment against husband and wife in solido (though it appears afterwards to have taken a nonsuit as to Mr. Barringer) for $2,000, with interest and attorney's fees, less a credit of $714.02. The Court of Appeal, on the rehearing, set aside the judgment, rejected plaintiff's demand against Mrs. Barringer, and gave judgment in her favor on her de-

mand in reconvention for $1,200, the amount shown to have been realized by the bank in the sale of the pledged securities.

## Opinion.

[1] It has been as well settled as anything could be in this state that since 1855, and prior to 1916, there have been two methods by which subject to certain conditions, a married woman has been capable of binding herself and her property in borrowing money; the one, by the mere authorization of her husband, or, in the event of his refusal to give it, by the authorization of the judge, after hearing the husband, in which case, the loan was made and accepted subject to the condition that, in the event of her raising the issue, or its being raised by her heirs, there could be no enforcement of her obligation unless the lender of the money proved affirmatively that the loan had inured to her separate benefit and not to the benefit of her husband or the community; the other method (provided by Act 200 of 1855, now articles 126, 127, 128 of the Civil Code) was by her obtaining the authorization of the judge, after an examination by him, separate and apart from her husband, concerning the purpose for which the money was to be borrowed, in which case, the law declared that, if he (the judge) should ascertain that either the money to be borrowed or the debt to be contracted was for the husband's debts, or for his separate benefit or advantage, or for the community, he should not give his sanction to the contract. On the other hand, if he became satisfied that the money was to be borrowed or debt contracted solely for the separate advantage of the wife, or for the benefit of her paraphernal or dotal property, he was required to furnish her with a certificate which would be the authority of a notary for drawing an act of mortgage, or other act which might be required of the wife as security, and such act, with the certificate attached, it was pro-

vided should furnish full proof against her and her heirs, and be as binding and have the same effect as if made by a feme sole.

It is, however, settled by the jurisprudence of this court that, though the burden of proof is shifted from the creditor to the debtor by the law thus referred to, nevertheless, if a married woman proves that the creditor has colluded with her husband to induce her to bind herself, or her property, for the benefit of the husband, or the community, or knew that the money loaned was to be so used, he cannot recover, since the transaction would be in fraud of the law. About the earliest case enunciating the doctrine that where the wife has only the authority of her husband her contract must be shown to have inured to her separate advantage is that of Durnford v. Gross and Wife, 7 Mart. (O. S.) 465 (1820), in which the husband and wife were sued upon a joint and several note, and the court held that the concurrence of the husband was sufficient authorization to the wife, but concluded by saying:

"In this case, therefore, no proof having been made that the debt contracted by the defendant jointly with her husband was applied to her use, in the manner required by law, we must say that the plaintiff cannot recover; and this view of the subject precluding the necessity of investigating the other points of defense, we dismiss their consideration."

In Brandegee v. Kerr and Wife, 7 Mart. (N. S.) 64 (being the first case upon the point that we find decided after the adoption of the Code of 1825), defendants, husband and wife, were sued on the note of the wife, indorsed by the husband, and received from the wife for a loan made by check delivered to her. Martin, J., in deciding the case, said:

"We therefore conclude that the circumstance of the wife having a separate advantage in the contract being of the essence of her obligation, must be proven by some other evidence than proof of her having touched the money. For, after receiving it, she may have handed it over to her husband, applied it to the wants of the family, employed it in relieving her husband from debts contracted for its support, or even

for other purposes, etc. Being of opinion that there is no fact in evidence from which it is possible to infer that plaintiff's money was employed for the separate use of the wife, in something that the husband was not obliged to furnish her with, we conclude that the wife is not bound."

In Fireman's Insurance Co. v. Cross, 4 Rob. 508, it appeared that the wife, authorized by her husband, gave a note secured by mortgage on her paraphernal property, and, being sued, denied that she had received any advantage therefrom, alleging that the transaction was for the benefit of her husband, as was well known to the plaintiff. The court said, inter alia:

"The article of the Code relied on, which forbids the introduction of evidence against, or beyond, what is contained in public acts, does not apply to contracts made in fraudem legis. If such an exception did not exist, and if it were not open to the defendant to show the real nature of the transaction, the laws made for the protection of married women would have no effect whatever. * * * The circumstance of the wife appearing alone in the contract, as having borrowed the money with the authorization of her husband, cannot distinguish this case from those in which we have so frequently exonerated married women from contracts entered into jointly and severally with their husbands when it was not shown that the debt has inured to their benefit. * * * It is for those who treat with married women to be upon their guard and see that the obligation that she contracts turns to her benefit and advantage." Citing 7 Mart. 484; 2 Id., N. S. 305; 5 Id., N. S. 431; 7 Id., N. S. 252; 8 Id., N. S. 692; 9 La. 587; 10 La. 147.

Other cases to the same effect are: Gaalon v. Matherne, 5 La. Ann. 495; Erwin v. McCalop, 5 La. Ann. 173; Hardin v. Wolf & Cerf, 29 La. Ann. 333; Nugent v. Stark, 30 La. Ann. 492; Calhoun v. Bank, 30 La. Ann. 772; Darling v. Lehman, Abraham & Co., 35 La. Ann. 1186; West v. De Moss, 50 La. Ann. 1349, 24 South. 325.

[2] The only other point that we find in the case is equally well settled, to wit, that the capacity of a married woman, domiciled in Louisiana, to bind herself by contract is determined by the law of her domicile. As was said by Eustis, C. J., in Roberts v. Wilkinson, 5 La. Ann. 372:

"The capacity of the appellant to contract, in ordinary cases, she being a married woman, domiciliated in this state, must be determined by our laws. The incapacity of a married woman to contract results from the relations which the law has established between husband and wife, and which are personal; and the laws creating the disabilities of minors and married women have always been classed among those which are called personal, * * * in contradistinction to real statutes." Citing Augusta Insurance Co. v. Morton, 3 La. Ann. 417.

In the case cited it was asserted that the defendant had executed the notes sued on in Mississippi, but the court held that would have made no difference, if true, saying:

"The whole current of the decisions in Louisiana has negatived the idea or possibility of defeating the effect of our laws which regulate the personal relation of its inhabitants by a mere temporary transit to another state, and any other conclusion would render those laws, and the necessary control of the state over to the persons and property of its citizens entirely nugatory."

See, also, Hyman v. Schlenker, 44 La. Ann. 108, 10 South. 623; Baer Bros. v. Terry, 105 La. 479, 29 South. 886; Id., 108 La. 598, 32 South. 353, 92 Am. St. Rep. 394; Marks v. Germania Savings Bank, 110 La. 659, 34 South. 725; First Nat. Bank v. Hinton, 123 La. 1018, 49 South. 692.

The rule of incapacity to contract, which the law of this state imposed upon married women, found its exceptions in those provisions, whereby they were permitted to enter into contracts when authorized by their husbands, and later by the judges of their domiciles, after being examined, and in perhaps a few other cases, specially provided for. By Act No. 94 of 1916 the General Assembly has so changed the law that it may now be said that the capacity of a married woman to contract is the rule, the incapacity, the exception. The act of 1916 has, however, no application to this case, which originated prior to its passage. The suggestion that we note in the opinion first handed down by the Court of Appeal, that, if a married woman may sell her property and give the proceeds to her husband, or make any other disposition of it,

she should, by the same token, be permitted to mortgage her property and give her husband the proceeds of the mortgage, makes a certain appeal as abstract reasoning, but we are here dealing with a question that has been reasoned out by the lawmakers to a conclusion over which the courts have no control.

They (the lawmakers) have said, during a century or more, that a married woman should have no capacity to bind herself or her property for her husband's benefit, or for the payment of his debts. They have not said that she should have no capacity to sell her property, nor has she been altogether prohibited from giving it, or its proceeds, to her husband, though the proportion that she has been allowed to give has been limited to what may be given to a stranger and the donation has been always revocable. Whether the act of 1916 makes any change in that respect remains to be seen.

The fact that the note sued on was the last of a series, the first of which was given to the Ouachita Bank, does not affect the main question here presented; the debt, in its origin, was one for which the defendant had no capacity to bind herself, and it was neither novated nor was its character changed by the renewal of the notes.

The case has been correctly decided, and it is therefore ordered and decreed that the demands of the applicant be rejected, and this application dismissed at its cost.

O'NIELL, J., dissents.